211 So.2d 498

Robert Tennent SIMPSON, as Executor of
the Estate of Sally Sewell Simp-
son, Deceased

v.

CITY OF MONTGOMERY and
Alabama Power Company.

Robert Tennent SIMPSON

v.

CITY OF MONTGOMERY and
Alabama Power Company.

3 Div. 344, 345.

Supreme Court of Alabama.

May 30, 1968.

Rehearing Denied June 24, 1968.

Hill, Hill, Whiting & Harris, Montgom-
ery, for appellants.

Walter J. Knabe and Parker & Hoffman, Montgomery, for City of Montgomery.

Steiner, Crum & Baker and Martin, Balch, Bingham, Hawthorne & Williams, Montgomery, for Alabama Power Company.

**370**

HARE, Special Justice.

In Ex parte. Simpson—Ex parte Alabama Power Co., 280 Ala. 586, 196 So.2d 702, this case was before us on a petition for mandamus to the trial judge with reference to whether various interrogatories should or should not be answered. That opinion explains the circumstances under which the members of this Special Court are sitting instead of the regular members of the Court. For the same reasons, we are called upon to hear and determine this appeal from the final judgment of non-suit.

The complaint charges the City of Montgomery and the Alabama Power Company with combined and concurrent negligence in maintaining the power pole alleged to be the proximate cause of the fatal accident made the basis of one case and the bodily injuries made the basis of the other case. The trial court sustained demurrer to the complaint and the plaintiff suffered a non-suit and appealed. The cases are submitted on a motion to dismiss the appeal and on the merits.

■■ The first point for our consideration is the appellees' motion to dismiss the appeal which essentially is founded on the fact that after sustaining the demurrer to the complaint, the trial judge added a notation that the plaintiff had permission to file an amendment eliminating the case for concurrent negligence against the Alabama Power Company and thereby leaving one defendant, the City, in the case. We

overrule the motion to dismiss the appeal. A plaintiff is entitled to his remedy by non-suit and appeal if the adverse ruling of the court makes it necessary to preserve the integrity of his case. That requirement is not met so long as there remains a single *count* of the complaint upon which the plaintiff can proceed, but the requirement is met where one defendant is eliminated, and a single *defendant* remains in the case, in a complaint charging concurrent negligence of both defendants. This is the holding of McGough v. Wilson, 273 Ala. 179, 137 So.2d 43, interpreting the non-suit statute. Title 7, § 819, of the Code.

The decision on the merits presents a much more difficult question. The plaintiff commendably included in his complaint a statement of the physical facts specifically describing the location of the pole, stating that: "his (plaintiff) automobile collided with an unlighted utility pole situated on the median separating East bound and West bound lanes for vehicular travel on said Highland Avenue, which said pole was located approximately 2 feet 7 inches from the East curb line of a four inch high granite curb of said median and approximately 4 feet 3 inches from the North curb line of said four inch high granite curb of said median and approximately 19 feet from the South curb line of said four inch high granite curb of said median, said pole being approximately 29 feet 11 inches from the North curb of Highland Avenue and approximately 44 feet 5 inches from the South curb of said Highland Avenue, and thereby and as the proximate result and consequence thereof plaintiff" suffered the loss and damage claimed.

Thus, plaintiff elected to plead the quo modo of negligence alleged, which must prevail over the conclusion that defendants "negligently maintained said pole in dangerous proximity to the street"—if, as a matter of law, there is no liability for maintaining a pole so located within the median

and outside of the traveled portion of the street. That is the legal question presented by this appeal.

■ The question is not answered for the defendant Alabama Power Company by the fact that the City of Montgomery authorized it to place the pole in this location. Although a pole located as authorized by law cannot be a nuisance, City of Prichard v. Ala. Power Co., 234 Ala. 339, 175 So. 294, a municipal corporation could not license a public utility to violate a common law duty of due care owed to the public. Blashfield Automobile Law, 3rd Edition, Vol. 4, § 163.9 on p. 295. The Court held in the case of Cullman-Jefferson Counties Gas District v. Reeves, Ala., 199 So.2d 78 (1967):

> "We have long been committed to the proposition that one using a public way for its own purposes, *even with permission*, must use due care to avoid injury to the traveling public. 25 Am.Jur., Highways." (Emphasis supplied.)

■ We must face the real legal issue: Does liability arise from the maintenance of a power pole in the location described in the complaint?

In our judgment it does not.

Both sides rely upon Birmingham Electric Co. v. Lawson, 239 Ala. 236, 194 So. 659. In that case a count was held good against demurrer which averred that the defendant maintained a pole—

> "which said pole was located in close and dangerous proximity to the travelled portion of said public highway, and was within the right of way of said highway and * * * rendered the said highway dangerous for use by the plaintiff and by the public."

Had plaintiff in the present case chosen to limit his count to a similar statement, under the *Lawson* case, the demurrer must

have been overruled. Since, however, this complaint pleads the facts relied upon, it is necessary to compare the location of the pole in the *Lawson* case, as stated in the evidence with the location of the pole in this case, as stated in the complaint. The evidence in the *Lawson* case was held sufficient to sustain a verdict for the plaintiff.

We cannot escape the issue by reason of the fact that here we have pleading construed more strictly against the pleader and there we had evidence judged by the scintilla rule favorably to the plaintiff. Whether the location of the pole in this case is construed favorably or strictly, the location is plain and certain and the appeal presents the issue of law plainly.

Appellant urges that in the *Lawson* case the distance the pole was located from the edge of the paved portion of the highway where the accident occurred ranged from 18 inches to 3 or 4 feet and that it was therefore as far distant from the paved portion of the highway as is the pole in the case before us. But in the *Lawson* case the pole was located on the shoulder of the road and on a curve whereas the pole in this case is located within a parkway or median separated from the traveled portion of the road by a high curb.

We find no Alabama case involving a pole within the median, but the weight of authority elsewhere finds the difference critical. The reason for the distinction is that it is foreseeable and proper for an automobile to travel upon the shoulder of a road. It is sometimes required to do so.[1] But it is not reasonably foreseeable or ordinarily necessary for an automobile to be driven across the curb and upon the median. The size of the median, which by definition is located between two or more lanes of traffic, itself limits the maximum lateral distance which the pole may be located from the street.

Otherwise stated, the location of the pole in the *Lawson* case on the shoulder would

_____

1. Code of Ala. Title 36, § 25.

not contradict the averment of negligence by way of conclusion that the defendant maintained it in such close proximity to the portion of the highway set apart and devoted to public use as to be dangerous to members of the public in the legitimate use of the highway. To the contrary, we hold that the averment in this case that the pole was located behind a granite curb and well within the median contradicts and must prevail over the averment by way of conclusion in the count that it was located so as to endanger West bound traffic in the lawful use of the highway.

In City of Birmingham v. Cox, 230 Ala. 99, 159 So. 818, the Court said:

"Negligence may be averred in a complaint in general terms, and when the allegation is of the acts constituting negligence relied upon, the pleading is demurrable, unless such acts, so averred, in themselves constitute actionable negligence as a matter of law."

When facts are set up in the complaint as constituting the quo modo of negligence they may either (a) show negligence as a matter of law, or (b) show that as a matter of law there was no negligence, or (c) they may "in themselves show or suggest negligence"—Birmingham Ry. Light & Power Co. v. Barrett, 179 Ala. 274, 60 So. 262. Where, as here, the facts as a matter of law show no duty or breach thereof, the count is demurrable notwithstanding an averment of negligence by way of conclusion.

The *Lawson* case cites the case of Gilbert v. Southern Bell, 200 Ala. 3, 75 So. 315. The pole was located "between the outside edge of the road and on the west side of the center of said road at a point about 4 feet from the outside edge of said road." There a verdict for the defendant was affirmed and the plaintiff complained of the giving at the request of the defendant of charge 9 as follows:

"The defendant had a right to maintain its pole at a point along the margin of the road, provided that said pole was not at a place where it interfered with the usual customary use of the road by the public."

The Court did state:

"We prefer not to accept the proposition of charge 9 as universally true."

The opinion then explained its view further, stating that such utilities could not—

"take advantage of the convenient windings of travel due to difficulties in the road, to intrude their poles into that part of a highway set apart and devoted to the use of the public traveling on foot and in vehicles. * * * This means necessarily that their poles may be planted within the borders of the way devoted to public use; but they must not unreasonably or unnecessarily interfere with or endanger the use of the highway by the traveling public."

The opinion reviews the evidence showing that the pole in the *Gilbert* case was located so that the charge—

"practically it meant only that defendant was within its right if its pole was planted without the used roadway thus set apart and devoted to use."

By way of dictum the Court added:

"It is doubted indeed, whether on the evidence defendant was not entitled to the general affirmative charge on the whole case"—

but since a verdict for defendant was affirmed this was not necessary to the decision.

Since there is no Alabama decision involving a pole located within the median, we have carefully studied the decisions in other jurisdictions. They are collected in 3 A.L.R.2d in an annotation beginning on p. 6. They are there divided into categories including (a) those in which the pole was located inside the traveled portion of the highway, (b) those in which it was located outside the traveled portion, and (c)

those in which it was located outside the traveled way in a parkway or area separated by a curb from the traveled way. The annotation of group (c) begins on p. 51.

The cases which expressly refer to poles within the median or parkway bounded by a curb as a general rule hold that as a matter of law a utility maintaining a pole in this location does not breach any duty which it owes to the traveling public.[2]

There is a difference between the location of a pole outside the traveled way on a shoulder and the location of a pole outside of the traveled way in the median behind a curb. For this difference to become a matter of law and not a matter of fact, the difference must be one of kind and not merely of degree.

The standard texts state the general rule of no liability where the pole is located in the median. The case most often quoted is that of Clinkenbeard v. City of St. Joseph, 321 Mo. 71, 10 S.W.2d 54, 61 A.L.R. 242. In 25 Am.Jur. "Highways," § 527, p. 810, the author states:

: "The rule of non-liability has, in a number of instances, been applied in the case of injuries resulting from the collision of vehicular traffic with objects placed or maintained within the limits of park strips or parkways" citing *Clinkenbeard,* supra, and the annotations in 59 A.L.R. 387.

We find the general rule in Vol. 60 of C.J.S. under the title "Motor Vehicles— Poles and Wires" on p. 552:

"It has been held that the erection and maintenance, with the approval of the highway authorities, of a pole in the street but outside the traveled portion

of the way is not negligence" citing *Clinkenbeard,* supra.

The sentence continues that the utility may be liable where the pole

"is located so near to the traveled part of the highway as to interfere with the use of the highway provided the location of the pole is the proximate cause of the injury." Further, it is stated that the utility "must anticipate such uses of the road as will probably occur."

In Blashfield Automobile Law, 3rd Edition, Vol. 4, § 163.18 under the title "Utility Poles" on p. 392, the statement of the rule makes the distinction between poles located along the edge of a public highway, as in the *Lawson* case, and those maintained on a parkway. That portion of the section states:

"A public service company maintaining, with the consent of the city, an electric light or telephone pole *on a parkway* entirely outside of the traveled and improved roadway, erected and maintained in the manner and at the place and distance from the curb that similar poles throughout the city are maintained, is not liable to a motorist colliding with such pole." (The footnote cites the *Clinkenbeard* case.)

§ 163.9 on p. 395:

"It has been held that municipal authorities have no right to give permission to obstruct a road by erecting poles within the roadway. However, they may set apart a portion of its streets between the sidewalk and the traveled way for vehicles for the erection of poles for electric light wires, telephone wires, trolley wires, and for similar purposes, and need not devote the entire street to the use of vehicles."

2. We do not decide the situation presented by the cases involving circumstances of peculiar and unusual hazard existing by reason of bottlenecks or "jogs" or where there is no curb or other conditions tending to place the pole within the general direction of travel where it

is reasonbly foreseeable that a motor vehicle in the expected use of the street may be endangered. See Peninsular Telephone Co. v. Marks, 144 Fla. 652, 198 So. 330; Bourget v. Public Service Co., 98 N.H. 237, 97 A.2d 383. The present complaint states no such case.

From Gulfport & Mississippi Coast Traction Co., at al. v. Manuel, et al., 123 Miss. 266, 85 So. 308 (Mississippi) contained in the annotation in 82 A.L.R. on p. 399, the following is quoted:

"A user of vehicles is not entitled to the entire street from property line to property line. The street not only serves the needs of the traveling public, but serves also the purpose of furnishing the public the conveniences above set out * * * The pole was situated outside of the traveled way, and it was not negligence to permit the pole to be erected as it was in this case."

The case of Peninsular Tel. Co. v. Marks, 144 Fla. 652, 198 So. 330, is the most favorable authority supporting the theory of the plaintiff that we have found. There, a verdict for the plaintiff was affirmed upon a factual situation generally similar to that set up in the present complaint. Headnote 4 of the opinion, however, describes the location of the pole as

"about 30 inches outside the right-hand curb of street near beginning of a sharp left curve and obscured by small hill."

Cramer v. Detroit Edison, 296 Mich. 662, 296 N.W. 831, is a parkway case where the post was inside the curb. It cites and follows the *Clinkenbeard* case.

New York has recently decided the case of Ellis v. State, 16 A.D.2d 727, 226 N.Y. S.2d 803. Liability was denied because—

"the pole was not on the shoulder or pavement part of the highway."

The pole was not in the median but was well beyond the shoulder. We quote:

"When the State provides an unobstructed pavement reasonably adequate to accommodate traffic it is permissible for it to use the remaining land within the boundary lines of the highway for other useful purposes."

The general rule is well settled that the court must make this distinction, against liability, where the pole is located within the median. Mere distance does not make the difference. The granite curb around the parkway marks a location that is literally out of bounds for motor traffic and thus marks an area in which the movement of motor vehicles cannot be reasonably foreseen by the party responsible for the location of a pole in such an area. Practical considerations support the rule. In almost every city and town in the state, this space within the median is used for the location and maintenance of telephone and telegraph poles, traffic signs, fire hydrants and similar structures. They must be maintained within relatively close proximity to the traveled portion of the highway by reason of the limits of space within the median.

We hold that the complaint as written does not state the violation of a duty owing by the defendants to the plaintiff. The judgment of the trial court is affirmed.

Affirmed.

HILL, Special Chief Justice and THORNTON, Special Justice, concur.

TIPLER, Special Justice, concurs in part and dissents in part.

TIPLER, Special Justice (dissenting in part).

I concur insofar as the motion to dismiss the appeal is concerned, but cannot agree that the complaint fails to state a cause of action.

In Birmingham Electric Co. v. Lawson, 239 Ala. 236, 194 So. 659, the Court upheld a jury verdict for the plaintiff where a pole was located approximately the same distance from the traveled portion of the road as was the pole in the instant case. The only difference is that one pole was on a shoulder and the other on a median.

The majority opinion, when stripped, says that from this day forward there can be negligence on the part of one placing a pole in Alabama, if that pole is placed on a

shoulder; but there cannot be negligence on the part of one placing a pole in Alabama, if that pole is placed on a median—no matter where.

Medians do not necessarily have curbs, and poles can be located around blind corners within medians. Medians are constructed in many different ways and shapes. Medians will continue to be constructed in new and different ways in the future. The mind can fashion hundreds of future happenings where a pole, carelessly placed in a median, will cause injury and death to the innocent. The majority opinion grants free license to the pole placer within a median but restricts him to the scrutiny of a jury on a shoulder. I fail to see the difference. If the *Lawson* case is bad law it should be overruled, not written around.

Unless the *Lawson* case is overruled, the plaintiffs in these cases sould be allowed to present their evidence; and, if under our scintilla rule, that evidence falls within the *Lawson* case, a jury should determine negligence or the lack of it.

I respectfully dissent.