MICHELLE LEMINGS, A Minor, by and through Her Mother and Next Friend, Sandra Lemings, *et al.*, Plaintiffs-Appellees, *v.* COLLINSVILLE SCHOOL DISTRICT NUMBER TEN *et al.*, Defendants—(Metro East Disposal, Inc., Defendant-Appellant; Donald Delashmit, Defendant).

Fifth District   No. 82—549

Opinion filed September 30, 1983.

JONES, J., specially concurring.

John H. Marshall, of St. Louis, Missouri, for appellant.

Jack A. Strellis, of Waterloo, for appellees.

PRESIDING JUSTICE HARRISON delivered the opinion of the court:

Defendant Metro East Disposal, Inc. filed an interlocutory appeal from an order overruling its motion to dismiss plaintiffs' second amended complaint. The question, which was raised by the pleadings and certified by the trial court for appeal pursuant to Supreme Court Rule 308, is whether defendant's motion to dismiss should have been sustained as a matter of law. For the following reasons, we affirm the trial court's decision.

Plaintiffs' second amended complaint alleged that on December 15, 1980, at approximately 3 p.m., 10-year-old Michelle Lemings attempted to cross Harvard Street in Madison County, Illinois. She left the State Park School grounds on her way to a girl scout meeting. The complaint further alleged that, as she moved past a trash dumpster owned and positioned on the school grounds by Metro East Disposal, Inc., she was struck and seriously injured by an automobile driven by defendant Donald Delashmit. In count III of the complaint against Metro East Disposal, Inc., the plaintiff stated the following:

"7. The defendant, Metro East Disposal, Inc., through its agents, servants and employees was then and there guilty of the following negligent act or omission, to wit: Having had knowledge or through the reasonable exercise of care would have knowledge that school children would be crossing at or near a dumpster placed at or near State Park School, failed to

place the dumpster at a location where it would not act as a barrier and hinderance of the view of automobile drivers driving on Harvard Street, and/or in view of pedestrians, namely the plaintiff, crossing Harvard Street at or near State Park School.

8. As a direct and proximate result of the negligent act or omission of the defendant, the plaintiff, Michelle Lemings was permanently and severely injured in and about her body and has been incapacitated and will remain so for the duration of her natural life during all of which time she has and will incur great pain and suffering; further, upon reaching majority, the plaintiff, Michelle Lemings, will become liable for substantial medical expenses and expenses for the daily care of her being."

Count VII of the complaint contained substantially the same allegations.

The issue on appeal is whether plaintiffs' second amended complaint states a cause of action against Metro East Disposal, Inc. Defendant contends that the alleged obstruction, the trash dumpster, created nothing more than a condition which made the accident possible. It maintains that the obstruction cannot be considered a proximate cause of the child's injuries because the proximate cause was her own negligence and that of the driver of the automobile. Defendant therefore requests that this court reverse the trial court's ruling and enter an order directing the trial court to dismiss Metro East with prejudice.

In response to the argument that defendant's conduct was not the proximate cause of the accident, plaintiffs cite several cases in which proximate cause is discussed. Although the cases are factually dissimilar to the present case, the discussions contained therein are relevant to our determination. For example, *Davis v. Marathon Oil Co.* involved a suit by a gasoline delivery-truck driver against the owner of a service station, the station attendant and the oil company who owned and installed the gasoline pumps. (*Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, 356 N.E.2d 93.) The driver sued for injuries he received when a pump failed to shut off, spilling gasoline onto the pavement. Experts testified that the gasoline was ignited either by sparks from a space heater inside the station or by sparks passing between plaintiff and the nozzle of the pump. In deciding that Marathon could be held liable for its negligent installation of the pumps if the other intervening events were foreseeable, the court quoted from *Neering v. Illinois Central R.R. Co.* (1943), 383 Ill. 366, 380-81:

" 'What constitutes proximate cause has been defined in nu-

merous decisions, and there is practically no difference of opinion as to what the rule is. The injury must be the natural and probable result of the negligent act or omission and be of such a character an [*sic*] an ordinarily prudent person ought to have foreseen as likely to occur as a result of the negligence, although it is not essential that the person charged with negligence should have foreseen the precise injury which resulted from this act. [Citations.] An intervening efficient cause is a new and independent force which breaks the causal connection between the original wrong and the injury and itself becomes the direct and immediate cause of the injury. [Citations.] The intervention of independent concurrent or intervening forces will not break causal connection if the intervention of such forces was itself probable or foreseeable. [Citations.] What is the proximate cause of an injury is ordinarily a question of fact to be determined by a jury from a consideration of all of the evidence. [Citation.]' " *Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, 394-95.

■ The same concept was applied in *Bentley v. Saunemin Township* (1980), 83 Ill. 2d 10, 413 N.E.2d 1242, in which the supreme court held that the township was negligent for not trimming the branches at an intersection. It said the negligence was a proximate cause of the death of a passenger in an automobile which collided with another vehicle at the intersection. In spite of the jury's special finding that the driver's negligence was the cause of the passenger's death, the *Bentley* court held that there "may be more than one proximate cause of an injury [citations], and that may well be the case here." (*Bentley v. Saunemin Township* (1980), 83 Ill. 2d 10, 17.) It also cited *Neering,* for the proposition that

"The negligence of a defendant will not constitute a proximate cause of a plaintiff's injuries if some intervening act supersedes the defendant's negligence, but if the defendant could reasonably foresee the intervening act, that act will not relieve the defendant of liability." 83 Ill. 2d 10, 15.

■ This court recently discussed proximate and intervening cause, in the context of a premise liability suit. (*Bak v. Burlington Northern, Inc.* (1981), 93 Ill. App. 3d 269, 417 N.E.2d 148.) In *Bak* the plaintiff died from an overdose of pain-killers she took for relief from injuries received in a fall on defendant's property. In deciding that a material question of fact regarding causation still existed, the court reversed a summary judgment granted in favor of defendant and stated that " '*** it is not essential that the person charged with

negligence should have foreseen the precise injury which resulted from his act.' [Citation.] The intervention of a new, independent intervening cause does not necessarily relieve one of responsibility for a negligent act 'when the intervening cause of an injury is of such a nature as could reasonably have been anticipated, ***.' '' *Bak v. Burlington Northern, Inc.* (1981), 93 Ill. App. 3d 269, 271.

With these principles in mind, we reject defendant's contention that its motion to dismiss should have been sustained as a matter of law. After careful examination of the pleadings, we agree with the trial court that the plaintiffs have stated a cause of action against defendant. The complaint alleges that Metro East had a duty to exercise reasonable care and caution for the safety of others. It alleges that this duty was violated by the placement of the dumpster in such a manner that it hindered the view of both pedestrians and drivers on Harvard Street. It states that, as a direct and proximate result of the negligent placement of the dumpster, the plaintiffs incurred severe and permanent injuries. As the court in *Davis* decided, the actual proximate cause of injury is a question of fact which must be determined by a jury after consideration of all the evidence. (*Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, 395.) We make no determination on the merits at this time. We hold merely that plaintiffs' complaint is sufficient to state a cause of action.

Consequently, the order of the circuit court of Madison County denying defendant Metro East Disposal, Inc.'s motion to dismiss is hereby affirmed.

Affirmed.

KASSERMAN, J., concurs.

JUSTICE JONES, specially concurring:

In holding that plaintiffs' second amended complaint is sufficient to state a cause of action against defendant, Metro East Disposal, Inc. (Metro), the majority reaches what I believe to be the correct result in the case, but I respectfully disagree with the basis for its decision.

The issue on appeal is presented by Metro's claim that its act in placing the dumpster was not the proximate cause of plaintiff's injury and that its dumpster did nothing more than create a condition that made plaintiff's injury possible through the independent negligent act of a third party, the driver of the automobile that hit the plaintiff. Metro contends that, as a matter of law, it cannot be held liable for plaintiff's injury. Countering, the plaintiffs contend that the complaint

is sufficient to raise a factual issue as to whether Metro's actions in the case were a proximate cause of plaintiff's injury and that the case against Metro thus cannot be concluded at the pleading stage as a matter of law.

Despite the arguments that have been framed and presented by the parties in terms of the issue of "proximate cause," it seems obvious that the real contention of Metro is that the plaintiffs' second amended complaint is insufficient to show that it was under any duty to take measures to guard against an injury to the plaintiff and that, accordingly, under any set of facts that might be disclosed by the evidence, there can be no liability imposed upon Metro for plaintiff's injury. Could the majority have decided in this case that, as a matter of law, the injury plaintiff received was *not* the foreseeable consequence of Metro's placement of the dumpster and, accordingly, could not have been the proximate cause of plaintiff's injury? Yes, they could have, because the real issue in the case at this point is one of law for the determination of the court: was the plaintiff at the time of her injury, as shown by the facts alleged in her complaint, within the scope or range of protection of a duty owed by Metro to the plaintiff?

If the injury should have been "foreseen" by Metro, the majority writes, then the act of Metro in placing the dumpster was the "proximate cause" of plaintiff's injury, and the case must go back for trial on the "foreseeability" issue. In my opinion, the majority should not have decided this case on the basis of "proximate cause" or its cousin, "creation of a condition," or on the basis of the foreseeability" of the plaintiff's injury by Metro.

The question of whether a duty exists in a particular case and the scope or range of protection thereof is a question of law. The terms "foreseeable" and "proximate cause," however, are properly used with reference to questions of fact. Whether an injury was "foreseeable" is the test used by a jury to determine whether a defendant was guilty of a breach of duty (see *Mieher v. Brown* (1973), 54 Ill. 2d 539, 301 N.E.2d 307); whether a defendant's conduct was the "proximate cause" of a plaintiff's injury is the test used by a jury to determine whether there was a causal connection between a defendant's conduct and a plaintiff's injury. Nevertheless, Illinois courts regularly use the terms "foreseeable" and "proximate cause" to decide as a matter of law whether a plaintiff's injury falls within the scope of a duty the defendant owed the plaintiff on the occasion in question. The use of the two terms in this way is unfortunate because it is misleading, tending to obscure the real issue—one of law, not of fact—the court has actually been asked to decide. When a court uses terms that refer

to questions of fact to decide a question of law, vagueness, uncertainty, and misunderstanding are a sure consequence. The use of such fact-oriented terms as "proximate cause" and "foreseeability" to determine issues related to the scope of duty obscures the fact that the court is dealing with an issue of law and suggests that the scope of a duty is a question of fact for the jury when it is not. It is simply confusing to use the same terms that are commonly known to relate to questions for the trier of fact in order to determine the question of law of the scope of a duty.

It can be said with easy certainty that whether a defendant is under a duty to a plaintiff on a particular occasion is a question of law for the determination of the court alone, and a multitude of Illinois cases so hold without a contrary voice. (*E.g., Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 328 N.E.2d 538; *Mieher v. Brown.*) In negligence cases in which Illinois courts have considered the existence, as distinguished from the scope, of a duty, there has been no difficulty in discounting the prominence of "foreseeability" and "proximate cause" and concentrating on policy considerations that underlie the finding of a duty.

> "In many negligence cases no more than foreseeability is involved. And because so many actions grounded upon negligence involve familiar patterns of conduct, it is easy to forget that implicit in an allegation of negligence is the assertion of a failure to comply with the standard of care that the law requires—the assertion of a duty and its breach. [Citations.] ***
>
> After the event, hindsight makes every occurrence forseeable, [*sic*] but whether the law imposes a duty does not depend upon forseeability [*sic*] alone. The likelihood of injury, the magnitude of the burden of guarding against it and the consequences of placing that burden upon the defendant, must also be taken into account." (*Lance v. Senior* (1967), 36 Ill. 2d 516, 518, 224 N.E.2d 231, 233.)

See also *Barnes v. Washington* (1973), 56 Ill. 2d 22, 305 N.E.2d 535 and the statement of Professor Leon Green used in *Mieher v. Brown* (1973), 54 Ill. 2d 539, 544, 301 N.E.2d 307, 309-10, a frequently quoted passage in Illinois duty cases.

But it is never a sufficient discharge of a court's role in a negligence case to determine whether a duty exists. Equally important for the court, once a duty is found, is the determination of whether the injury complained of was incurred within the scope or range of protection afforded by that duty.

Restatement (Second) of Torts sec. 435(2) (1965), makes a pointed

reference to the scope or range of protection of a duty owed and to the fact that it is for the determination of the court by viewing the event in retrospect.

"The actor's conduct may be held not to be a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm.

\* \* \*

Comment on Subsection (2):

(c). Where it appears to the court in retrospect that it is highly extraordinary that an intervening cause has come into operation, the court may declare such a force to be a superseding cause. \*\*\* *Analytically, the highly extraordinary nature of the result which has followed from the actor's conduct (with or without the aid of an intervening force) indicates that the hazard which brought about or assisted in bringing about that result was not among the hazards with respect to which the conduct was negligent.* \*\*\* *Strictly, the problem before the court is one of determining whether the duty imposed on the actor was designed to protect the one harmed from the risk of harm from the hazard in question.* \*\*\* *However, courts frequently treat such problems as problems of causation.* \*\*\*

d. *Viewing after the event.* \*\*\* The court's judgment as to whether the harm is a highly extraordinary result is made after the event with the full knowledge of all that has happened. This includes those surroundings of which at the time the actor knew nothing but which the course of events discloses to the court. \*\*\*

e. It is impossible to state any definite rules by which it can be determined that a particular result of the actor's negligent conduct is or is not so highly extraordinary as to prevent the conduct from being a legal cause of that result. This is a matter for the judgment of the court formulated after the event, and therefore, with the knowledge of the effect that was produced." (Emphasis added.) Restatement (Second) of Torts sec. 435(2), Comments *c, d, e,* at 452-54 (1965).

Some Illinois courts have recognized in express terms the function of the scope or range of protection of duty in a number of cases. The cases that follow are illustrative.

In *Mieher v. Brown* plaintiff's decedent brought an action against the manufacturer of a truck for negligent design of the truck. The is-

sue considered was the existence of a duty upon the manufacturer of the truck to design a vehicle with which it would be safe to collide. The court stated that "although foreseeability is generally accepted as the test to be applied by a jury in determining if a duty has been violated, in defining the scope of the duty, other elements must be considered by the court." (54 Ill. 2d 539, 544, 301 N.E.2d 307, 310.) The court found the manufacturer not liable because the injury in issue was beyond the scope of any duty, citing section 435(2) of the Restatement.

*Rozny v. Marnul* (1969), 43 Ill. 2d 54, 250 N.E.2d 656, was an action for damages arising out of a negligent survey of real estate brought by a plaintiff who had no privity of contract with the defendant. The court abandoned any previously pertaining requirements of privity of contract, stating: "[T]ort liability will henceforth be measured by the scope of the duty owed rather than the artificial concepts of privity." 43 Ill. 2d 54, 62, 250 N.E.2d 656, 660.

In *Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 441 N.E.2d 324, plaintiff, the second owner of a home, sued the builder for allegedly improper construction. The complaint alleged theories of contract, tort, fraud and implied warranty of liability. Although the count for breach of an implied warranty of liability was held to be sufficient to allege a cause of action, the count in tort for negligence in construction was held properly dismissed. Citing *Rozny v. Marnul*, the court stated that the measure of liability in a tort action is based on the scope of the duty owed. However, the court declined to "discuss in detail the scope of the duty owed to this plaintiff" because a plaintiff cannot recover solely economic losses in tort.

*First National Bank v. City of Aurora* (1978), 71 Ill. 2d 1, 373 N.E.2d 1326, *French v. City of Springfield* (1976), 65 Ill. 2d 74, 357 N.E.2d 438, and *Dini v. Naiditch* (1960), 20 Ill. 2d 406, 170 N.E.2d 881, state that the violation of a statute or ordinance designed for the protection of human life or property is *prima facie* evidence of negligence and that an injured party has a cause of action if he was intended to come within the scope of the protection afforded by the statute or ordinance. Although those cases involved duties that were created by statute or ordinance, the scope or range of protection of a duty arising from application of common law principles should receive similar consideration, for the principle is the same in both instances.

In *Cross v. Wells Fargo Alarm Services* (1980), 82 Ill. 2d 313, 412 N.E.2d 472, the plaintiff had been beaten by unknown men in the lobby of a building in a housing project. He brought suit for damages based on negligence against the owner of the project and against

Wells Fargo, who furnished guard services for certain hours of the day pursuant to a contract with the owner. The court held that since the beating occurred 15 minutes after the time limitation for services provided in the contract, the complaint should be dismissed as to Wells Fargo. Although not expressly so stated, it is obvious that the court found plaintiff's injuries in this negligence action to be outside the scope of the duty created by the contract.

In *Gustafson v. Mathews* (1982), 109 Ill. App. 3d 884, 441 N.E.2d 388, the plaintiff was a widow of a tavern patron who was killed, along with four children, after he drove away from a tavern in a drunken condition. Plaintiff's action was for damages for negligence. The court held that "the scope of the duty created by an employee's assisting an incapacitated patron into his car does not include the patron's later acts off the premises." 109 Ill. App. 3d 884, 888, 441 N.E.2d 388, 391.

Although, as we have just seen, some Illinois courts that have considered the scope of a duty have spoken expressly in terms of the "scope of the duty owed," many courts that have considered the issue have not done so. The courts in some cases, to paraphrase comment *c* of section 435 of the Restatement (Second) of Torts set forth above, have considered the problem of the scope or range of protection of a duty in terms of causation, determining whether the defendant's conduct was "foreseeable," or the "proximate cause" of the plaintiff's injury or whether the defendant merely "furnished a condition" by which the plaintiff's injury was made possible through the intervening negligence of a third party. Two phrases that courts approaching the problem in terms of foreseeability commonly use are "simply foreseeable" and "reasonably foreseeable." Any distinction in meaning between these two phrases is unexplainable. Yet, courts use the two repeatedly to determine whether a defendant's conduct falls within the scope or range of protection required by a duty owed the plaintiff. If the harm to plaintiff was "reasonably foreseeable," the defendant is subject to liability, provided that negligence and a causal relationship are established, and if the harm to plaintiff was "simply foreseeable," no liability will attach to the defendant's conduct, notwithstanding the fact that the defendant was under a duty to the plaintiff on the occasion in question. Illustrations for the foregoing analysis are easily found.

In *Merlo v. Public Service Co.* (1943), 381 Ill. 300, 45 N.E.2d 665, plaintiff's decedents were killed by an electrical charge received when the boom of a crane came in contact with uninsulated overhead power lines of defendant power company. The court expressly found that the

power company owed a duty to see that its wires were properly placed and insulated with reference to persons in places where they have a legal right to be, and the court also found that plaintiff's decedents were rightfully and lawfully located at the time of the accident. Nevertheless, the court held as a matter of law that the acts of defendant power company in using uninsulated lines, and in permitting those lines to sag, were not the proximate cause of the deaths because defendant's conduct only created a condition which made the accident possible through the intervening negligence of a third party. The court thus utilized a "no proximate cause" basis for its decision when there was simply no question at all that defendant's power lines were a direct and undisputed cause of the deaths. Since the duty of defendant was present, it is obvious that the court used "no proximate cause" to express its decision that, as a matter of law, the deaths of the workmen were outside the scope or range of protection of the duty. The court's decision was doubtless the consequence of the highly unusual and unexpected, that it to say, the "highly extraordinary," nature of the accident.

Similarly, in *Neering v. Illinois Central R.R. Co.* (1943), 383 Ill. 366, 50 N.E.2d 497, plaintiff sued defendant railroad for injuries received in an assault in defendant's station while she was awaiting the arrival of a suburban train. The court expressly found the defendant to be under a duty to safeguard plaintiff. Defendant argued that the assault was the intervening act of another and therefore its negligence was not the proximate cause of plaintiff's injury. The court decided against the defendant on this issue with a discussion of what constitutes the furnishing of a condition and what constitutes proximate cause that has been quoted in many subsequent Illinois cases:

> "It cannot be denied that if the negligence of the defendant only furnishes a condition and that condition causes an injury by the subsequent independent act of a third person, the creation of the condition is not the proximate cause of an injury. However, the rule is that the subsequent independent act, in order to break the causal connection, must be one, the intervention of which was not probable or foreseeable by the first wrongdoer. What constitutes proximate cause has been defined in numerous decisions, and there is practically no difference of opinion as to what the rule is. The injury must be the natural and probable result of the negligent act or omission and be of such a character as an ordinarily prudent person ought to have foreseen as likely to occur as a result of the negligence, although it is not essential that the person charged with negli-

gence should have foreseen the precise injury which resulted from his act. (*Illinois Central Railroad Co. v. Oswald*, 338 Ill. 270, [170 N.E. 247]; *Hartnett v. Boston Store of Chicago*, 265 Ill. 331, [106 N.E. 837, L.R.A.1915C, 460].) An intervening efficient cause is a new and independent force which breaks the causal connection between the original wrong and the injury and itself becomes the direct and immediate cause of the injury. (*Illinois Central Railroad Co. v. Oswald*, 338 Ill. 270; *Pullman Palace Car Co. v. Laack*, 143 Ill. 242, [32 N.E. 285, 18 L.R.A. 215].) The intervention of independent concurrent or intervening forces will not break causal connection if the intervention of such forces was itself probable or foreseeable. (*Wintersteen v. National Cooperage & Woodenward Co.* 361 Ill. 95, [197 N.E. 578]; *Sycamore Preserve Works v. Chicago & Northwestern Railroad Co.* 366 Ill. 11, [7 N.E.2d 740, 111 A.L.R. 1133].) *What is the proximate cause of an injury is ordinarily a question of fact to be determined by a jury from a consideration of all of the evidence. Phillabaum v. Lake Erie & Western Railroad 315 Ill. 131, [145 N.E. 806].*" (Emphasis added.) 383 Ill. 366, 380-81, 50 N.E.2d 497, 503-04.

This language was obviously used to express both the court's decision that the scope or range of protection of the duty owed by defendant could extend to cover plaintiff's injury and its opinion that the question of whether there was a causal relation (the proximate cause) between defendant's negligence and plaintiff's injury was a jury question.

In *Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74, 117 N.E.2d 74, another frequently cited case for issues involving the scope or range of protection of duty, the court's decision on the issue is needlessly and confusingly couched in terms of foreseeability and proximate cause. Those same terms are likewise referred to as questions of fact for a jury. There, a thief stole a parked taxi cab with its ignition key in place and, while in flight, hit plaintiff's car and caused damage for which the cab company was sued. A provision of a statute regulating traffic on highways required persons who leave motor vehicles unattended to lock the ignition and remove the key. Thus, a duty was imposed by statute. The concern of the court in a lengthy review of issues and precedents was the scope or range of protection of the duty, though, as stated, it was not expressly so framed. "This [violation of the statute as *prima facie* evidence of negligence] in itself creates no liability. The injury must have a direct and proximate connection with the violation of the statute before liability will be held to exist." (2 Ill.

2d 74, 79, 117 N.E.2d 74, 78.) In other words, the injury must be received within the scope of the duty imposed by the statute. The court found that the scope of the duty imposed by the statute could include plaintiff's damages by properly resorting to a consideration of policy matters attending the great increase in population, the number of vehicles and the increases of traffic-related injuries. It then stated: "We are here concerned only with the question as to whether or not this intervening force [the thief] is without or within the range of reasonable anticipation and probability." (2 Ill. 2d 74, 82, 117 N.E.2d 74, 79.) The court used part of the above quotation from *Neering* and concluded with respect to the issue by stating:

> "[W]e find no persuasive authority and no impelling reasoning for this court to hold, *as a matter of law*, that no actionable negligence can exist.
>
> Questions of negligence, due care, and proximate cause are ordinarily questions of fact for the jury to decide." 2 Ill. 2d 74, 83-84, 117 N.E.2d 74, 80.

The case of *Cunis v. Brennan* (1974), 56 Ill. 2d 372, 308 N.E.2d 617, involved an unusual, freakish accident in which plaintiff's leg was impaled upon a stake or pipe in a parkway when he was thrown approximately 30 feet from the automobile in which he was a passenger and which had been involved in a collision with another automobile. The case involved a suit against the municipality that owned and maintained the parkway. The court discussed the question of duty and recited the excerpt from Professor Leon Green as used in *Mieher v. Brown*. The court then stated: "In addition, in determining whether there was a legal duty, the occurrence involved must not have been simply foreseeable, as the plaintiff contends; it must have been reasonably foreseeable." (56 Ill. 2d 372, 375-76, 308 N.E.2d 617, 619.) The court quoted section 435(2) of the Restatement (Second) of Torts and held "that the remote possibility of the occurrence did not give rise to a legal duty on the part of the Village to the plaintiff to provide against his injury. 'No man can be expected to guard against harm from events which are not reasonably to be anticipated at all, or are so unlikely to occur that the risk, although recognizable, would commonly be disregarded.' (Prosser, Handbook of the Law of Torts (4th ed. 1971), sec. 31, at 146.)" (56 Ill. 2d 372, 377-78, 308 N.E.2d 617, 619.) The dissent in the *Cunis* case stated that there is no question that a municipality owes that duty to exercise ordinary care to keep its streets, sidewalks and parkways safe for use by persons who are themselves in the exercise of ordinary care. The dissent further stated that the majority had confused the questions of duty and fore-

seeability. The dissent argued that whether the defendant village failed to exercise ordinary care in permitting the pipe to remain in the parkway was a question of fact, as was the question of whether it was "reasonably foreseeable" that failure to do so might cause injury.

It is readily apparent from reading the *Cunis* case that the majority did indeed find a duty upon the part of the village and that that duty was as expressed by the dissent. It is also apparent that the court found that the highly unusual circumstances of plaintiff's injury cast it beyond the scope or range of protection of the duty and, accordingly, the court held that the village was not liable as a matter of law. Had the court drawn a line of demarcation between duty and scope of duty, and shown its determination with regard to that scope, the dissent would have had little to write about for there would have been no question that the court was dealing with a question of law and not one of fact.

In *Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, 356 N.E.2d 93, plaintiff had been injured as a result of a gasoline explosion and fire at a service station. These occurred when gasoline overflowed during a filling operation and was apparently ignited by a pilot light from a heater. The court found a duty present by virtue of a statute which regulated the storage, transportation and sale of gasoline. But even without the statute there would have been no question that a duty would also have been imposed under common law principles. The principal issue in the case seemed to be whether the plaintiff's injury was received within the scope or range of protection of defendant's duty to protect others while making, or receiving, deliveries of gasoline. The issue was presented when defendant argued that, as a matter of law, its negligence was not the cause of plaintiff's injury. The court quoted the "proximate cause" discourse from *Neering* that is set forth above and went on to state:

> "Defendant has cited cases in which a defendant's negligent conduct was determined as a matter of law not to have proximately caused the resulting injuries. [Citations.] We emphasize, however, that each case must turn on its own facts. Defendant remains liable for its negligence if the intervening event [in this case, the pilot light inside the station which served to ignite the gasoline] was foreseeable. Moreover, to escape liability, defendant must demonstrate that the intervening event was unforeseeable as a matter of law. This we cannot conclude. Proximate cause is ordinarily a question for the jury to decide." (64 Ill. 2d 380, 395, 356 N.E.2d 93, 100.)

The court in its discussion of proximate cause was obviously deciding

as a matter of law that plaintiff's injuries were received within the scope or range of protection of defendant's duty and recognizing negligence and causal relation as jury questions. There was certainly no question that defendant's conduct was a cause of plaintiff's injury. The "proximate cause" concern can be related only to the issue of the scope of the duty.

In *Felty v. New Berlin Transit, Inc.* (1978), 71 Ill. 2d 126, 374 N.E.2d 203, plaintiff was riding atop a truck hauling a large circuit breaker. He was knocked to the ground and injured by a line that General Telephone Company had strung across the street. The *Merlo* case, which had also involved low hanging power lines, was not followed. The court stressed its remark in *Davis v. Marathon Oil Co.* that each case must turn upon its own facts and noted that in *Merlo* the wires were suspended over an ordinarily untraveled parkway whereas in *Felty* the wire was suspended over a public street. The court used a quotation from *Merlo*:

> " '[I]t [proximate cause] can only be a question of law when the facts are not only undisputed but are also such that there can be no difference in the judgment of reasonable men as to the inferences to be drawn from them. ***' " (71 Ill. 2d 126, 130, 374 N.E.2d 203, 204.)

Then, in the first sentence following the quotation the court said: "In subsequent cases this court has repeatedly stated that the question of proximate cause is ordinarily a question for the jury." (71 Ill. 2d 126, 130, 374 N.E.2d 203, 205.) The court concluded that the jury might decide that if a cable were negligently placed below the minimum height over a roadway, it was foreseeable that someone would run into it. Thus, the court found a duty present, and its real concern was whether the scope of that duty would extend to plaintiff's unusual injury. It held as a matter of law that it would so extend and left it to a jury to determine negligence and causation.

In *Greene v. City of Chicago* (1978), 73 Ill. 2d 100, 382 N.E.2d 1205, plaintiff was injured while standing at the rear of his stalled car, which was hit by another automobile. Plaintiff's car had come to a stop beneath street lights placed and maintained by the city, but at the time of the accident the lights were not working and it was "pitch dark." The court readily found that the city was under a duty at the time of the accident. Defendant then claimed that the absence of artificial lighting was not the proximate cause of plaintiff's injury. The court cited *Cunis v. Brennan* and *Neering v. Illinois Central R.R. Co.* as a basis for its finding that proximate cause is a jury question. As in numerous other cases, the court had actually decided as a matter of

law that plaintiff's injury had been received within the scope or range of protection of the defendant city's duty and that questions of negligence and causation were for the jury.

A large number of cases from the appellate court could be added to those discussed above, but considerations of length of the opinion prevent any further discussion. However, there are three appellate court cases sufficiently similar to the case at bar to be instructive.

In the case at bar it is relatively easy to determine that Metro did have a duty to the plaintiff when it placed its dumpster in such a position that it, at least allegedly, interfered with plaintiff's vision of oncoming traffic as she crossed the street. That duty is explained in Restatement (Second) of Torts sec. 368, at 268 (1965):

> "Conditions Dangerous to Travelers on Adjacent Highway
>
> A possessor of land who creates or permits to remain thereon an *** artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact with such condition while traveling with reasonable care upon the highway, is subject to liability for physical harm thereby caused to persons who
>
> (a) are traveling on the highway, or
>
> (b) foreseeably deviate from it in the ordinary course of travel."

Thus, the duty owed by Metro to the plaintiff in this case was to place the dumpster so as not to interfere unreasonably with plaintiff's vision of oncoming traffic as she crossed the street. However, the duty question could not be put to rest by the court until it also determined that the duty imposed extended to the plaintiff under the facts alleged in plaintiffs' complaint. No duty ever found to exist in a negligence case is unlimited in its application. It cannot be applied to protect a plaintiff under any and all circumstances. (See Restatement (Second) of Torts sec. 435(2) (1965).) Accordingly, as a part of the duty issue, a plaintiff must show, and the court must determine, not only that a defendant owed a duty of protection to the plaintiff but also that plaintiff was within the scope or range of protection of that duty under the facts of the case.

As in the instant case, the three appellate court cases just referred to expressly rely on section 368 of the Restatement, quoted above, as expressive of the duty involved and serve to illustrate the issue regarding the scope or range of protection of duty.

In *Kubala v. Dudlow* (1958), 17 Ill. App. 2d 463, 150 N.E.2d 643, the trial court had discussed a complaint that alleged that defendant

landowners erected and maintained a row of concrete posts abutting and in close proximity to a highway at a point where the highway made a sharp turn and that the posts therefore posed a danger to persons using the highway and caused injury to plaintiff. As in the case under consideration, the defendant landowners filed a motion to dismiss in which they contended that their actions did nothing more than furnish a condition by which the injury was made possible. The court said that this contention was "tantamount to contending that the complaint shows upon its face that the acts of the appellees were not the proximate cause of the injury to the plaintiff." (17 Ill. App. 2d 463, 469, 150 N.E.2d 643, 646.) The court concluded on the point by stating: "We have carefully examined the complaint in this case and are of the opinion that the complaint brings this cause of action within the application of the general rule above noted [section 368 of the Restatement (Second) of Torts]." (17 Ill. App. 2d 463, 469, 150 N.E.2d 643, 646.) It can be seen that the court was not talking about proximate cause as a factual issue at all. It decided as a matter of law that the defendant landowners did owe a duty to plaintiff under the facts alleged and that the plaintiff was within the scope or range of protection of that duty. The case was remanded for a trial at which a jury would determine whether the defendants were negligent and whether their negligence in fact contributed to cause plaintiff's injury.

In *Hoffman v. Vernon Township* (1981), 97 Ill. App. 3d 721, 423 N.E.2d 519, plaintiff brought an action against Commonwealth Edison Company (Edison) and others for the death of plaintiff's intestate in a one-car accident in which the decedent's car left the highway and struck a utility pole of Edison that was located 12 to 16 feet from the road. The trial court granted summary judgment to Edison on the pleadings and exhibits, finding that "the accident was not reasonably foreseeable on the part of Edison and it therefore breached no duty." (97 Ill. App. 3d 721, 722, 423 N.E.2d 519, 520.) The appellate court decision properly related that the determination of the question of duty is a question of law for the court. "While the existence of a legal duty is ordinarily considered in terms of foreseeability, the duty is not bottomed on foreseeability alone," the court said, "Other factors to be taken into consideration, besides the foreseeability of the possible harm, are the likelihood of injury from the existence of a condition, the magnitude [of the burden] of guarding against it, and the consequences of placing the burden upon the defendant. [Citation.]" (97 Ill. App. 3d 721, 724, 423 N.E.2d 519, 521.) The court noted that Edison's duty was expressed by the Restatement (Second) of Torts sec. 368, and found that sufficient facts were presented by the exhibits to

enable the court to determine as a matter of law whether a duty existed. The court then applied the facts to the law (sec. 368) and found that no duty existed because it was not

> "reasonably foreseeable to Edison under the facts here that the decedent would deviate from the road as he did as a normal incident of travel. While it is foreseeable that any driver could, for any number of reasons, leave the paved highway surface, it must be reasonably foreseeable to create a duty." 97 Ill. App. 3d 721, 726, 423 N.E.2d 519, 523.

The court cited *Cunis v. Brennan* for the statement that " '[I]n determining whether there was a legal duty, the occurrence involved must not have been simply foreseeable \*\*\*; it must have been reasonably foreseeable. \*\*\*' " (97 Ill. App. 3d 721, 724, 423 N.E.2d 519, 521.) The court concluded that no duty existed because it was not "reasonably foreseeable" to Edison that this particular type of accident would occur. Thus, the court made the duty determination on the basis of a distinction between "simply foreseeable" and "reasonably foreseeable."

It is somewhat ironic that in the last paragraph of its opinion, expressed as *dicta*, the court set forth reasons that fully explain the true basis of its determination and the proper reasoning process to be followed in determining the existence as well as the scope or range of protection of duty:

> "The question of whether a legal duty exists must also be analyzed in view of the public policy favoring placement of utility poles along highway right-of-ways, and the State practice of regulation and approval of such placement. Electric poles are erected and maintained along most roads and streets in this state for a necessary public benefit. Generally, location of these poles in medians or on public right-of-ways adjacent to a road does not impose liability upon a utility company unless the placement creates a hazard for vehicular travel in the ordinary course of travel. (See *Shapiro v. Toyota Motor Co.* (1978), 38 N.C. App. 658, 248 S.E.2d 868; *Simpson v. City of Montgomery* (1968), 282 Ala. 368, 211 So. 2d 498.) Aware of the undesirable consequences that would flow from imposing a duty upon Edison under the facts of this case, we decline to do so." (97 Ill. App. 3d 721, 727, 423 N.E.2d 519, 523.)

In short, utility poles placed 12 to 16 feet from the traveled portion of a highway as a matter of law do not impose an unreasonable burden upon travelers' use of a highway.

The same court that decided the *Hoffman* case had before it later

another case of similar nature but with facts of a more compelling nature, *Boylan v. Martindale* (1982), 103 Ill. App. 3d 335, 431 N.E.2d 62. In *Boylan* the plaintiff was a passenger in an automobile who was injured when that automobile collided with another at an intersection and then had a secondary impact with a utility pole situated from six to 12 *inches* from the traveled portion of the highway. Plaintiff's suit was brought against the driver of the other automobile and against the City for its breach of duty in failing to remove trees and bushes near the intersection, which obstructed the view of approaching drivers, and for negligently permitting the placement of a utility pole in a dangerous position near the highway. The complaint also named as defendants the Commonwealth Edison Company (Edison) and Bell Telephone Company (Bell), which were charged with negligence in the placement and maintenance of the utility pole. The trial court granted motions to dismiss the counts of the complaint directed to the City, Edison and Bell for failure to state a cause of action. The appellate court predictably placed heavy reliance on its decision in the *Hoffman* case, but very obviously ran into a great deal of difficulty in dealing with the fact that here the utility pole involved was only six to 12 inches from the traveled portion of the highway, whereas in the *Hoffman* case it had been 12 to 16 feet from the traveled portion of the highway. As in *Hoffman*, the question was whether the alleged facts showed the defendants to be under a duty to the plaintiff and whether the plaintiff's injury was within the scope or range of protection of that duty. Again, the court advanced dual reasons for its decision to affirm the dismissal of all counts against the city, Edison and Bell. The court quoted section 368 of the Restatement (Second) of Torts as expressive of the duty owed. In this case, however, the court, as the first-stated basis of its decision, quoted as "particularly relevant" their *dicta* from *Hoffman* regarding the fact that the question of whether a legal duty exists must be analyzed in view of the public policy favoring placement of utility poles along highways. Such statement would have been sufficient reason to hold that the City, Edison and Bell owed no duty to plaintiff, and it would have been unnecessary to consider whether plaintiff's injuries were within the scope or range of protection afforded by a duty. However, the court went on with an analysis of duty and the scope thereof based on the facts of the case.

> "It is common knowledge that vehicles collide in roadways and on occasion leave the roadway and strike a utility pole or tree adjacent to the roadway. However, for a duty to third persons to be imposed upon those who erect and maintain such utility

poles, there must be a reasonable anticipation of such deviation from the roadway as a normal incident of travel." (103 Ill. App. 3d 335, 346, 431 N.E.2d 62, 70-1.)

Despite the fact that the complaint alleged that the utility poles lining North Avenue (the locale of the pole involved here) had been continually subjected to collisions with automobiles, the court found that the complaint did not allege sufficient facts to "create such a duty" because it did not allege that the *particular* pole in question had been previously struck by automobiles and did not attempt to correlate the conditions that led to the striking of other utility poles with the conditions that led to the striking of this particular pole.

The *Boylan* case furnishes a good example of the difficulty that can arise when duty and scope of duty are discussed in terms of foreseeability of harm. The factual application made by the court found no such foreseeability in harm to a motorist from a utility pole placed almost upon the traveled portion of the highway. It leads to a strained and tortured result. Almost certainly there was foreseeable harm, as almost any jury would have found. The court should have stopped its reasoning with the statement that duty arises from policy decisions, and as a matter of policy, entities that erect and maintain utility poles adjacent to highways come under no duty with regard to travelers upon the highway who are injured by the placement of such poles. There would have been no reason, then, to consider the scope or range of protection of any duty.

It should be said that other courts could very well have reached a contrary conclusion in the *Boylan* case upon the basis of the same policy matters discussed there. *Cf. Kubala v. Dudlow.*

The case under consideration presents issues for determination of the court that are similar to those in *Kubala, Hoffman* and *Boylan.* Those issues are whether defendant was under a duty and whether plaintiff's injury was incurred within the scope or range of protection of that duty. The majority concluded not only that defendant was under a duty but also that plaintiff's injury was incurred within the scope of the duty. However, it did so by analyzing duty and its scope in terms of proximate cause and foreseeability. Such an approach is unreliable and misleading because it does not focus on the true basis for the determination of duty and its scope or range of protections.

Although the trial court and the majority opinion have approached the issues of the case upon the basis of foreseeability, proximate cause and the furnishing of a condition that provided an occasion for an accident through the independent, intervening negligence of a third party, I nevertheless believe that their underlying and unexpressed

process of reasoning and decision went something like the following.

There is a policy against blocking streets from the full vision of pedestrians who use streets in a normal manner. The reason is that streets are, at best, places of danger because of automobile and truck traffic, and pedestrians are at a continual disadvantage because of the size and speed of the vehicles on the street. It is generally not an unreasonable burden upon individuals, companies or other entities to avoid placing obstacles near a street so as to block or impede the vision of pedestrians. These policy matters are expressed in section 368 of the Restatement (Second) of Torts, and accordingly there is no question that the defendant here was under a duty to this plaintiff as imposed by law.

The next compulsory question is, was the injury plaintiff received, as disclosed by the facts alleged in the complaint, within the scope or range of protection of the duty? If the dumpster had been placed on a street on the other side of town, or on another street a block away from plaintiff's accident, or on the same street but a block away from plaintiff's accident, the accident plainly would not have been within the scope of the duty. It would be a ridiculous notion to suggest it, and no one ever would do so. If the dumpster had been on the same street but 300 feet distant from the scene of plaintiff's accident, there still would have been little question that the accident was not within the scope or range of protection of the duty. At a distance of 300 feet, however, the factors that enter into the process for determining the scope of the duty begin to surface. It might cross the mind of an able and aggressive attorney that the dumpster could have had something to do with plaintiff's accident. That attorney would add the defendant as a party and press his case, although perhaps with little expectation of success. Little would be required for a defendant to evade responsibility for the accident, for it would be obvious that at a distance of 300 feet the dumpster in all likelihood could not have contributed to the cause of the accident. The court would consider the matter with some care but probably decide that, as a matter of law, the defendant was not liable for plaintiff's injury, *i.e.*, plaintiff's injury was received outside the scope or range of protection of the legal duty of the defendant. At distances between 300 feet and 50 feet, different judges might reach different conclusions as to whether plaintiff's injury was received within the scope of the duty owed. But if the dumpster were 50 feet, or less, from the scene of plaintiff's accident, plaintiff's attorney would join Metro as a party-defendant as one at least partially responsible for plaintiff's injury and press his case with vigor and insistence. In defense, the defendant would say, "It's just a condi-

tion." The court would give careful consideration to the matter and probably conclude that, as a matter of law, plaintiff's injury was incurred within the scope or range of protection of the duty imposed by law upon the defendant. As the case goes to trial and sufficient evidence is produced by both sides to get beyond the *Pedrick* motions, the court will have performed its proper role in the case by ruling on the matters of law presented to it. The jury will then be called upon to perform its role in the case by deciding three factual issues:

(1) Was defendant negligent, *i.e.*, should defendant have foreseen that by placing its dumpster at the chosen site the plaintiff might be injured on this occasion;

(2) Was defendant's negligence the proximate cause of plaintiff's injury. "Proximate cause" is properly used at this juncture to denote causation or causal connection (see Illinois Pattern Instructions (IPI), Civil, No. 15.01 (2d ed. 1971)); and if (1) and (2) are answered in the affirmative:

(3) Was plaintiff injured, and the nature, extent and dollar value thereof.

In most negligence cases the determination of the presence of a duty comes relatively easily because most injuries fall within previously recognized areas of the law where a duty has been found to exist, and available precedents serve as a ready guide. But the principal difficulty with duty obviously comes with the question of its scope or range of protection. That is readily apparent from the cases. Issues regarding the scope or range of protection could be disposed of with greater ease and understanding if a court would in express terms merely state that an injury was or was not inflicted within the scope or range of protection of a duty owed by a particular defendant to a particular plaintiff. That issue is resolved by the court by viewing the incident after the fact and determining as a matter of law whether the injury received by the plaintiff was so extraordinary and unusual that the defendant should not have been required to guard against it. It is another question of policy.