WILLIAM HOFFMAN, SR., Adm'r of the Estate of William Hoffman, Jr., Deceased, Plaintiff-Appellant, *v.* VERNON TOWNSHIP *et al.*, Defendants-Appellees.

Second District    No. 80-480

Opinion filed June 26, 1981.

John R. Goshgarian and James J. DeSanto, both of Waukegan, for appellant.

May, Decker & Associates, of Waukegan (Markham M. Jeep, of counsel), for appellees.

Mr. JUSTICE REINHARD delivered the opinion of the court:

Plaintiff, William Hoffman, Sr., administrator of the estate of William Hoffman, Jr., deceased, brought an action against defendant Commonwealth Edison Company (Edison) and other defendants as a result of a one-car accident which occurred on August 12, 1976, at approximately 11:20 p.m., and which ultimately led to the death of the operator of that car, William Hoffman, Jr. (decedent), on August 25, 1976. Plaintiff's multicount complaint alleged in count VII an action against Edison for wrongful death and in count VIII an action for pain and suffering from the date of the occurrence until decedent's death. Upon Edison's motion for summary judgment on the pleadings and exhibits attached to the motion, and on plaintiff's response and exhibit attached thereto, the trial court granted summary judgment for Edison, finding that, on the undisputed facts and circumstances submitted to him, the accident was not reasonably foreseeable on the part of Edison and it therefore breached no duty. The trial court found no just cause to delay enforcement or appeal of its judgment, and plaintiff appeals.

Plaintiff's complaint alleges that decedent was operating a motor vehicle in a northerly direction on Port Clinton Road, at or about a point 112 feet south of Route 45 in Vernon Township, Lake County. He further alleges that Edison maintained a utility pole near Port Clinton Road which decedent's automobile struck when it went out of control off the road. The complaint alleges generally a duty of Edison to exercise reasonable care and caution in the ownership, operation, management, maintenance and control of the utility pole so as not to cause harm and injury to persons legally and lawfully in the area.

The exhibits attached to the motion and response reveal that, shortly before the accident, Port Clinton Road was partially relocated in such a fashion that its new intersection with Route 45 became more perpendicular than the original road, which was abandoned at that point. Port Clinton Road was a two-lane road, between 22 feet and 24 feet wide at the point immediately adjacent to the utility pole in question, and the general speed

limit was 45 m.p.h. with a 25 m.p.h. speed limit at the curve. The parties are in agreement that at the time of the accident there was a warning sign approximately 460 feet from the curve, which indicated a curve in the road and a 25 m.p.h. speed limit. A "STOP AHEAD" sign was located approximately 300 feet south of the beginning of the curve, and the two lanes were divided by two solid yellow lines indicating a no passing zone. The utility pole in question was located some 27 feet from the center line of the road at a distance of from 12 to 16 feet from the easterly boundary line of the road as delineated by a concrete curb. Decedent's vehicle left the roadway where Port Clinton Road turns northward, striking the curb in an easterly direction toward the old road bed. The car then proceeded out of control for approximately 60 feet after striking the utility pole. The utility pole had been relocated at least one year prior to the accident pursuant to a permit issued by the State Department of Transportation. The concrete curb was six inches high and six inches wide and extended at least 300 feet south of the pole. No skid marks were found in the area where the vehicle left the road or elsewhere.

Plaintiff attached as an exhibit a report of Packer Engineering Associates, Inc., which states that responsibility for the accident rests, in part, with "[t]he illusory effect of the clearing beyond the actual curve which would lead a driver to believe the road continued in a straight line for a considerable additional distance." The other possible causes listed are the driver's "inattention to observe, ignoring or misinterpreting the curve sign approximately 460 feet ahead of the curve," "[t]he insufficiency of warning provided for this situation including a failure to prove a sign on the curve itself * * *," or a combination of all of these. Although the complaint averred that Edison positioned the pole in a manner which created an illusory effect of a clearing at the curve, counsel for plaintiff admitted at oral argument that the pole didn't create the illusory effect, but instead was relying on the Packer report conclusion that the old road bed caused this effect.

There were no depositions attached to the motion and response, the supporting evidence consisting solely of a police report, diagrams and photographs of the area, the permit issued to relocate the pole, excerpts from the Department of Transportation Policy on Accommodation of Utilities on Rights-of-Way and the Packer report. No issue is raised before us relative to the competency of this supporting evidence. On appeal, plaintiff contends that Edison has a duty to exercise reasonable care in the placement and maintenance of its utility poles and that, where it is reasonably foreseeable that the existence of the old right-of-way with a clearing without trees would create the illusion of the road continuing on so as to delude drivers into driving straight into the pole, Edison has a duty not to so position the pole. In its brief, plaintiff has not contended

that there is any dispute of material fact, but instead sets out the legal issue of whether "the positioning, installation and maintenance of the pole constitute(s) a reasonably foreseeable risk to travelers that could and should have been avoided by the defendant."

■■ The determination of the question of duty, *i.e.*, whether the defendant and the decedent stood in such a relationship to one another that the law imposed upon defendant an obligation of reasonable conduct for the benefit of the decedent, is an issue of law for the determination of the court. (*Mieher v. Brown* (1973), 54 Ill. 2d 539, 541, 301 N.E.2d 307, 308.) While the existence of a legal duty is ordinarily considered in terms of foreseeability, the duty is not bottomed on foreseeability alone. (*Cunis v. Brennan* (1974), 56 Ill. 2d 372, 375, 308 N.E.2d 617, 618.) Other factors to be taken into consideration, besides the foreseeability of the possible harm, are the likelihood of injury from the existence of a condition, the magnitude of guarding against it, and the consequences of placing the burden upon the defendant. *Barnes v. Washington* (1973), 56 Ill. 2d 22, 29, 305 N.E.2d 535, 539.

With respect to foreseeability, our supreme court stated in *Cunis v. Brennan*:

> "[I]n determining whether there was a legal duty, the occurrence involved must not have been simply foreseeable * * *; it must have been reasonably foreseeable. The creation of a legal duty requires more than a mere possibility of occurrence. * * * Prosser (Handbook of the Law of Torts (4th ed. 1971), sec. 31, at 146) comments: 'No man can be expected to guard against harm from events which are not reasonably to be anticipated at all, or are so unlikely to occur that the risk, although recognizable, would commonly be disregarded.' In judging whether harm was legally foreseeable we consider what was apparent to the defendant at the time of his now complained of conduct, not what may appear through exercise of hindsight." (56 Ill. 2d 372, 375-76, 308 N.E.2d 617, 619.)

Upon its analysis of the duty question, the court in *Cunis* concluded that no such duty arose as to the plaintiff, who had been thrown some 30 feet from an automobile following a collision, and whose leg was then impaled upon a drain pipe protruding from the ground on a parkway maintained by the defendant municipality. We believe these facts are sufficiently similar to those in our case for that decision to give us guidance in assessing whether Edison owes a duty as a matter of law to the decedent.

Also pertinent is section 368 of the Restatement (Second) of Torts, which states the general rule of law applicable to factual situations similar to this one, involving artificial conditions near a highway:

"A possessor of land who creates or permits to remain thereon an excavation or other artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact with such condition while traveling with reasonable care upon the highway, is subject to liability for physical harm thereby caused to persons who

(a) are traveling on the highway, or

(b) foreseeably deviate from it in the ordinary course of travel." (Restatement (Second) of Torts §368 (1965).)

The official comments to the Restatement further illustrate the applicability of this rule:

"[The rule] applies also to those who reasonably and expectably deviate from the highway and enter upon the abutting land in the ordinary course of travel. The possessor is required to anticipate the possibility of such deviations and to realize, where a reasonable man would do so, that the traveler so deviating may encounter danger. The public right to use the highway carries with it the right to protection by reasonable care against harm suffered in the course of deviations which may be regarded as the *normal incidents of travel.*" (Emphasis added.) Restatement (Second) of Torts §368, comment e, at 269-70 (1965).

"In determining whether the condition is one which creates an unreasonable risk of harm to persons lawfully travelling on the highway and deviating from it, the essential question is whether it is so placed that travelers may be expected to come in contact with it in the course of a deviation reasonably to be anticipated in the ordinary course of travel. Distance from the highway is frequently decisive, since those who deviate in any normal manner in the ordinary course of travel cannot reasonably be expected to stray very far. * * * Distance is important, however, only as it affects the recognizable risk; and other factors, such as the nature of the condition itself, its accessibility, and the extent and character of the use of the highway, must be taken into account." Restatement (Second) of Torts §368, comment h, at 271 (1965).

The application of section 368 of the Restatement to the duty question has been referred to in several Illinois decisions. (See, *e.g.*, *Cunis v. Brennan* (1974), 56 Ill. 2d 372, 308 N.E.2d 617 (Goldenhersh, J., dissenting); *West v. Faurbo* (1978), 66 Ill. App. 3d 815, 384 N.E.2d 457; *Kubala v. Dudlow* (1958), 17 Ill. App. 2d 463, 150 N.E.2d 643.) While section 368 of the Restatement has not been expressly held by Illinois reviewing courts to be the general rule by which a duty is determined in similar factual situations, we nevertheless will take notice of section 368 as

indicative of "[t]he general rule of law applicable to a situation of this kind" (see *Kubala v. Dudlow* (1958), 17 Ill. App. 2d 463, 469, 150 N.E.2d 643) and apply it to the facts herein.

■ This case is presented to us on the granting of Edison's motion for summary judgment. Apparently, there are no living eyewitnesses to this occurrence and, therefore, this case was submitted for summary judgment without the benefit of depositions. However there are exhibits attached which adequately describe the undisputed, material facts and which enable us to determine as a matter of law whether a duty exists. The law applicable to motions for summary judgment which involve the issue of duty is set forth in *Barnes v. Washington* (1973), 56 Ill. 2d 22, 305 N.E.2d 535:

> " 'It may be stated generally that if what is contained in the pleadings and affidavits would have constituted all of the evidence before the court and upon such evidence there would be nothing left to go to a jury, and the court would be required to direct a verdict, then a summary judgment should be entered.' (*Fooden v. Board of Governors, 48 Ill. 2d 580*, at 587.) This court has also held that the entry of a summary judgment is proper when only a question of law is involved. (*Allen v. Meyer, 14 Ill. 2d 284.*) Thus, if under the pleadings and affidavits it appears that the defendant owed no duty to the incompetent, the granting of the motion for summary judgment was proper." 56 Ill. 2d 22, 26-27, 305 N.E.2d 535, 538.

■■ Reviewing the record in that light, we conclude that the trial court was correct in granting summary judgment for Edison. We do not believe it was reasonably foreseeable to Edison under the facts here that the decedent would deviate from the road as he did as a normal incident of travel. While it is foreseeable that any driver could, for any number of reasons, leave the paved highway surface, it must be reasonably foreseeable to create a duty. (*Cunis v. Brennan.*) For a duty to attach the person must foreseeably deviate in the *ordinary course of travel*, and it was not reasonably foreseeable to Edison that an illusory road effect was created by a third party which would cause decedent to leave the highway in the manner he did here, striking its utility pole some 12 to 16 feet off the highway. This is particularly true in light of the undisputed evidence contained in the summary judgment exhibits. There was a protective barrier, a curb, between the highway and the pole; the pole was located not immediately adjacent to the road, but some 12 to 16 feet away; there was a cautionary sign giving advance warning of a curve in the road; there was "STOP AHEAD" sign near the curve; there were double yellow lines dividing the two lanes going into and at the curve; there is no pleading or evidence of any prior accidents at the curve giving

notice of a dangerous condition to Edison; the pole was installed at that location with the approval of the State Department of Transportation; and there is no evidence that the pole itself created an illusory effect. As our supreme court stated in *Cunis v. Brennan* (1974), 56 Ill. 2d 372, 376, 308 N.E.2d 617, 619, "In judging whether harm was legally foreseeable we consider what was apparent to the defendant at the time of his now complained of conduct, not what may appear through exercise of hindsight."

While plaintiff's evidence does disclose that an abandoned road bed without foliage existed at the curve, the presence of two traffic regulation signs, double yellow lines dividing the two lanes and a protective 6-inch curb all operate as factors which dispel plaintiff's argument that decedent would foreseeably deviate from the highway in the ordinary course of travel so as to impose a duty upon an adjacent possessor of land. Further, here, unlike *Kubala v. Dudlow* (1958), 17 Ill. App. 2d 463, 150 N.E.2d 643, there is no allegation or evidence that Edison knew of or that there was any prior accident at the curve which would give it notice of a dangerous condition which could cause someone to leave the road at that location.

■■ The question of whether a legal duty exists must also be analyzed in view of the public policy favoring placement of utility poles along highway right-of-ways, and the State practice of regulation and approval of such placement. Electric poles are erected and maintained along most roads and streets in this state for a necessary public benefit. Generally, location of these poles in medians or on public right-of-ways adjacent to a road does not impose liability upon a utility company unless the placement creates a hazard for vehicular travel in the ordinary course of travel. (See *Shapiro v. Toyota Motor Co.* (1978), 38 N.C. App. 658, 248 S.E. 2d 868; *Simpson v. City of Montgomery* (1968), 282 Ala. 368, 211 So. 2d 498.) Aware of the undesirable consequences that would flow from imposing a duty upon Edison under the facts of this case, we decline to do so.

Having so concluded, we need not reach the remaining issues raised by Edison regarding proximate cause and contributory neligence.

Affirmed.

HOPF and NASH, JJ., concur.