MICHAEL HUTCHINGS, Plaintiff-Appellant, v. EUGENE BAUER *et al.*, Defendants-Appellees.

Second District   No. 2—90—0689

Opinion filed April 17, 1991.

REINHARD, P.J., specially concurring in part and dissenting in part.

Rudolph F. Magna, Jr., of Gurnee, for appellant.

Glen E. Amundsen, Ellen S. Martin, and Michael Resis, of Querrey & Harrow, Ltd., of Chicago, for appellees.

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, Michael Hutchings, brought an action against defendants, Eugene and Elizabeth Bauer, as a result of a motorcycle accident in Wauconda Township, Illinois. Plaintiff's two-count complaint alleged negligence and willful and wanton conduct on the part of defendants. Defendants moved for summary judgment, arguing that, under section 368 of the Restatement (Second) of Torts, they owed no duty to plaintiff in this case. The trial court granted defendants' motion, finding that no genuine issue of material fact was present, and that under the authority of *Battisfore v. Moraites* (1989), 186 Ill. App. 3d 180, "the plaintiff's deviation from the roadway was not an accidental deviation from the roadway as a normal incident of travel." The court also found no reason to delay enforcement or appeal of the order pursuant to Supreme Court Rule 304(a). (134 Ill. 2d R. 304(a).) Plaintiff now appeals and alleges that the trial court erred in granting defendants' motion for summary judgment. We reverse and remand.

Plaintiff raises the following contentions for our consideration on review: (1) that defendants owed a duty of care to the plaintiff because it was reasonably foreseeable that those traveling with reasonable care upon the highway would deviate from it in the ordinary course of travel and come into contact with the barrier erected by defendants; (2) that defendants violated a statutory duty to plaintiff not to obstruct a public roadway; and (3) that plaintiff had obtained the status of a licensee upon defendants' property, whereupon defendants then owed a duty of reasonable care not to injure plaintiff.

The facts of this case, adduced from the pleadings, depositions and exhibits on file, can be summarized as follows. On May 30, 1986, at approximately 3:05 p.m., plaintiff was allegedly injured when his motorcycle slid on loose gravel and went off the paved portion of Cal-

lahan Road in Wauconda Township and struck a barrier constructed by defendants. Plaintiff's complaint alternatively alleged that the defendants negligently and carelessly or willfully and wantonly placed a horizontal post or log in an area where defendants knew or should have known that vehicles leave northbound Callahan Road.

Callahan Road is a township road running generally north and south. Just prior to the location where plaintiff's motorcycle left the pavement, the roadway runs in an east to west direction and then curves sharply to the north. Plaintiff was in the northbound lane of Callahan Road at the time his motorcycle entered the curve. South and west of the curve there are several chevron signs marking the curve. There is also a 25-miles-per-hour "advisory" speed limit sign. The legal speed limit through the curve is 35 miles per hour. Plaintiff was familiar with the road, having traveled it 5 to 10 times in the month prior to the accident, and he knew that there was a sharp curve in the road. Plaintiff had seen the upright posts that defendants had installed at least a half dozen times before and knew that there was a fenced-in pasture nearby. Plaintiff did not know, however, that at the base of the vertical posts, and concealed by knee-high grass, were two horizontal logs or posts.

On the date of the accident, plaintiff and several of his friends were returning home from work and were riding their motorcycles northbound on Callahan Road. Plaintiff was the third in a line of four motorcyclists with Brad Davis and Ralph Galster in front and Carlos Nicoli behind. Plaintiff was riding near the outside or eastern-most portion of northbound Callahan Road. He hit some loose gravel on the road as he entered the curve and slid to the east across the graveled shoulder for 10 or 15 feet, and then onto the grass to the east of the shoulder of the road. Plaintiff was traveling between 35 to 37 miles per hour immediately before he left the highway and approximately 35 miles per hour at the time he actually left the highway. Plaintiff then traveled along the grass parallel to and approximately six to eight feet from the gravel shoulder for a distance of 150 to 300 feet before encountering defendants' barrier. As plaintiff traveled across the grass, he attempted to reduce his speed and regain control of his motorcycle. By the time he regained control of his motorcycle, plaintiff was approximately 15 feet from defendants' barrier and was able to reduce his speed to approximately 15 to 20 miles per hour. At this point, however, plaintiff felt that he was still going too fast and was too close to the upright fence posts to be able to turn his motorcycle to the left in order to get back onto the road. Plaintiff then decided to pass between the second and third posts rather than attempt to lay

his motorcycle down on the ground. As he attempted to pass between the upright posts at about 15 miles per hour, plaintiff hit an obstruction. When he hit defendants' barrier, plaintiff's head hit the instrument panel on his motorcycle, and he fell to the side.

At the time of the accident, the defendants operated a business of raising Norwegian Fjord ponies on the property, consisting of approximately 80 acres, and the grazing of these ponies required the fencing of the property. Along the immediate outside of the perimeter of the pasture fencing was a training lane which traversed around defendants' property for a distance of 5.4 miles. Defendants trained their ponies along the training lane practically every day of the year including the years 1985 and 1986. Defendant Eugene Bauer's first recollection of a vehicle leaving Callahan Road and entering upon his property was in 1973 after he and his wife moved onto the property. Defendants knew that cars, trucks and motorcycles came off the curve at Callahan Road and broke their fence posts; these occurrences took place both prior to and after the date of plaintiff's accident. At the time of his deposition on December 5, 1988, defendant Eugene Bauer was aware of "far more than 50" incidents of vehicles leaving Callahan Road and entering upon his property. A letter dated November 4, 1980, from defendant to Edward Streed, superintendent of the Lake County Highway Department, was introduced as an exhibit during defendant's deposition. In the letter, defendant makes the following statements:

"Unfortunately most of the cars that end up in the field, somehow or another, get out and are gone before the damage can be assessed to them, and you know who is on the short end of the stick. ***

*** Having no alternative and having a sizable band of very valuable Norwegian horses in this field in the past month or two, I have erected a 'barricade of large posts.' This barricade is on my fence line and in such position to stop the 'rollovers and/or others' who fail to make the curve prior to their going through my fence. I want you to know that I intend to expand the size of this barricade through the use of additional very, very sizable posts (that are, believe me, well into the ground). It is probably only a question of time until someone again comes off the road at that curve and ends up being 'stopped' by our barricade."

Frank Gossell, the Wauconda Township road commissioner, testified in his deposition that the point of impact was outside of the right-of-way for Callahan Road. Robert Degen, a licensed surveyor, testified

in his deposition that he could not determine whether the point of impact was inside or outside of the right-of-way for Callahan Road. Degen did state, however, that of the two vertical posts that plaintiff attempted to drive between, the western-most post, which was 21 feet from the edge of the roadway, would be within the right-of-way, while the eastern-most post, which was 26 feet from the edge of the roadway, would be outside of the right-of-way.

With these facts in mind, we turn now to our analysis of whether the lower court erred in granting defendants' motion for summary judgment. Summary judgment is a drastic means of disposing of litigation and therefore should be allowed only when the right of the moving party is clear and free from doubt. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240.) The motion shall be granted only if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c); *Purtill*, 111 Ill. 2d at 240.) The court must construe the evidence strictly against the movant and liberally in favor of the opponent. *Purtill*, 111 Ill. 2d at 240.

Necessary to any recovery based on negligence is the existence of a duty to conform to a certain standard of conduct for the protection of the plaintiff. (*Puttman v. May Excavating Co.* (1987), 118 Ill. 2d 107, 116.) It is well settled that the question of duty, *i.e.*, whether the defendant and the plaintiff stood in such a relationship to one another that the law imposed upon defendant an obligation of reasonable conduct for the benefit of the plaintiff, is one of law to be determined by the court. (*Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 525.) Reasonable foreseeability of injury is a key concern in determining whether a duty exists. (*Kirk*, 117 Ill. 2d at 526.) The court should also consider the likelihood of injury, the magnitude of the burden of guarding against it and the consequences of placing the burden on the defendant. (*Kirk*, 117 Ill. 2d at 526.) The law applicable to motions for summary judgment which involve the issue of duty has been set forth in *Barnes v. Washington* (1973), 56 Ill. 2d 22:

> " 'It may be stated generally that if what is contained in the pleadings and affidavits would have constituted all of the evidence before the court and upon such evidence there would be nothing left to go to a jury, and the court would be required to direct a verdict, then a summary judgment should be entered.' [Citation.] This court has also held that the entry of a summary

judgment is proper when only a question of law is involved. [Citation.] Thus, if under the pleadings and affidavits it appears that the defendant owed no duty to the incompetent, the granting of the motion for summary judgment was proper." *Barnes*, 56 Ill. 2d at 26-27.

■ Section 368 of the Restatement (Second) of Torts, which states the general rule regarding the duty of an owner of land abutting a public highway to protect travelers upon the highway who may come in contact with artificial conditions on the land, has long guided Illinois courts in factual situations similar to the instant case. (Restatement (Second) of Torts §368 (1965); *Battisfore v. Moraites* (1989), 186 Ill. App. 3d 180; *Kavanaugh v. Midwest Club, Inc.* (1987), 164 Ill. App. 3d 213; *Boylan v. Martindale* (1982), 103 Ill. App. 3d 335; *Hoffman v. Vernon Township* (1981), 97 Ill. App. 3d 721; *West v. Faurbo* (1978), 66 Ill. App. 3d 815; *Kubala v. Dudlow* (1958), 17 Ill. App. 2d 463.) Section 368 provides:

"A possessor of land who creates or permits to remain thereon an excavation or other artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact with such condition while traveling with reasonable care upon the highway, is subject to liability for physical harm thereby caused to persons who
   (a) are traveling on the highway, or
   (b) foreseeably deviate from it in the ordinary course of travel." (Restatement (Second) of Torts §368, at 268 (1965).)

The official comments to the Restatement further illustrate the applicability of this rule:

"[The rule] applies also to those who reasonably and expectably deviate from the highway and enter upon the abutting land in the ordinary course of travel. The possessor is required to anticipate the possibility of such deviations and to realize, where a reasonable man would do so, that the traveler so deviating may encounter danger. The public right to use the highway carries with it the right to protection by reasonable care against harm suffered in the course of deviations which may be regarded as the normal incidents of travel.
      * * *

In determining whether the condition is one which creates an unreasonable risk of harm to persons lawfully travelling on the highway and deviating from it, the essential question is whether it is so placed that travelers may be expected to come

in contact with it in the course of a deviation reasonably to be anticipated in the ordinary course of travel. Distance from the highway is frequently decisive, since those who deviate in any normal manner in the ordinary course of travel cannot reasonably be expected to stray very far. \*\*\* Distance is important, however, only as it affects the recognizable risk; and other factors, such as the nature of the condition itself, its accessibility, and the extent and character of the use of the highway, must be taken into account." (Restatement (Second) of Torts §368, Comments *e*, *h*, at 269-71 (1965).)

Finally, the Restatement provides an illustration of a factual situation involving a foreseeable deviation in the ordinary course of travel:

"1. A digs a ditch immediately adjacent to a highway upon which his land abuts at a point where cars, though carefully driven, are likely to skid. B's carefully driven car skids off the highway and into the ditch. A is subject to liability to B." Restatement (Second) of Torts §368, Illustration 1, at 270 (1965).

■ Reviewing the record in light of the above guidelines, we conclude that the trial court erred in granting summary judgment for defendants. We believe it was reasonably foreseeable to defendants under the present facts that plaintiff would deviate from the road as he did as a normal incident of travel. Defendants were well aware of the fact that vehicles left the roadway at the curve and entered upon their property. From the time defendants first considered purchasing the property in 1973 to Eugene Bauer's November 4, 1980, letter to the superintendent of the Lake County Highway Department, defendants had actual knowledge of at least 28 vehicles leaving the curve and entering upon their property. Moreover, at the time of his deposition in 1988, defendant Eugene Bauer was aware of "far more than 50" incidents of vehicles leaving Callahan Road and entering upon his property. Defendant's statement at his deposition demonstrates the reasonable foreseeability that plaintiff would leave the road in the manner in which he did and come in contact with defendants' barrier, to wit, "[I]t is probably only a question of time until someone again comes off the road at that curve and ends up being 'stopped' by our barricade."

■ Defendants in their brief make much of the fact that plaintiff hit their barrier some 21 to 26 feet from the edge of the road and some 100 to 300 feet from the point where plaintiff first lost control of his motorcycle. With respect to distance, it is true that "[d]istance from the highway is frequently decisive, since those who deviate in any normal manner in the ordinary course of travel cannot reasonably

be expected to stray very far." (Restatement (Second) of Torts §368, comment *h*, at 271 (1965).) Were this the first time that a vehicle had left Callahan Road and entered onto defendants' property, we might be more inclined to agree that distance in this case was dispositive. However, it is also true that "[d]istance is important, however, only as it affects the recognizable risk; and other factors, such as the nature of the condition itself, its accessibility, and the extent and character of the use of the highway, must be taken into account." (Restatement (Second) of Torts §368, comment *h*, at 271 (1965).) Under the facts of this case, where defendants had actual notice of numerous prior incidents, these other factors do not weigh in defendants' favor. Even though the distance involved is relatively substantial, defendants' barrier clearly involved a recognizable hazard to travelers upon Callahan Road. Taking these factors into account, it is clear that the recognizable risk is that vehicles which deviate from the curve on Callahan Road will travel toward defendants' property in the area where they constructed the barrier. Moreover, the nature of the condition (the barrier) is such that it was designed to stop moving vehicles which might leave Callahan Road from proceeding further onto defendants' property. The extent and character of the use of the roadway is such that on numerous previous occasions vehicles have left the roadway at this curve and entered upon defendants' property. We conclude that the distance traveled in this case does not take plaintiff's accidental deviation out of the "ordinary course of travel."

The second factor courts review when deciding whether a duty exists is the likelihood of injury occurring from the harm created by defendant. (*Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 526.) Here, defendants chose to put a hard, well-supported barrier in the path of oncoming vehicles which might leave the curved portion of Callahan Road. According to defendant Eugene Bauer in his deposition, the barricade used "very sizable posts" that were "well into the ground." Under these circumstances, we believe the likelihood of injury is obvious.

Also bearing on the issue of duty is the magnitude of the burden of guarding against injury and the consequence of placing that burden upon defendants. (*Kirk*, 117 Ill. 2d at 526.) In this case, we believe the burden and the attendant consequences are relatively minimal. At most, defendants could be required to move a small portion of the pasture fence. As a somewhat less burdensome alternative, defendants could use softer barriers of a break-away type. At the very least, defendants could have posted some form of warning on or near the horizontal barrier, so as to give notice of its existence to mo-

torists. Thus, while we sympathize with the defendants' plight and agree that they have a right to protect their property, such feelings do not vitiate the fact that, under the circumstances of this case, defendants also owed a duty to protect travelers on the adjacent roadway.

Finally, we note that the trial court, in granting defendants' motion for summary judgment, relied specifically on *Battisfore v. Moraites* (1989), 186 Ill. App. 3d 180. In *Battisfore*, the driver of a car in which plaintiff's decedent was a passenger failed to negotiate a curve, left the road and struck a cement pillar erected by Outboard Marine Corporation (OMC) to protect its property. Plaintiff, administrator of the estate of the deceased passenger, claimed that OMC was negligent or willful and wanton in placing the cement pillar immediately next to the roadway at a curve and in failing to warn travelers of its existence. This court affirmed the trial court's granting of summary judgment, holding that the defendant landowner owed no duty to plaintiff. *Battisfore*, 186 Ill. App. 3d at 190.

We believe *Battisfore* is distinguishable from the instant case in two respects. First, there is a great difference between the speed of the vehicles in relation to the applicable speed limits. The *Battisfore* court found speed especially important, stating as follows:

"[P]laintiff's decedent left the road and collided with the cement pillars on OMC's land while in a car traveling between 40 and 50 miles per hour around a clearly marked and illuminated sharp curve in a commercial area for which the general 30-miles-per-hour speed limit along the road was reduced to 20 miles per hour. Such deviation was not in the ordinary course of travel. * * *

* * * We do not believe that a duty should be placed on OMC under the circumstances here to guard against injury to plaintiff's decedent who is injured while a passenger in a vehicle which goes off the roadway striking the barricade pillar while traveling at a speed of 40 to 50 miles per hour around a curve in a clearly marked 20-miles-per-hour speed zone." (*Battisfore*, 186 Ill. App. 3d at 189-90.)

Here, plaintiff was traveling at approximately 35 miles per hour when he lost control of his motorcycle. While the "advisory" speed limit for the curve is 25 miles per hour, the legal speed limit for the area is 35 miles per hour. As we noted previously, Wauconda Township highway commissioner Frank Gossell testified in his deposition that a person cannot be given a ticket for violating this advisory speed limit. Thus, while plaintiff's decedent in *Battisfore* was traveling in a car that was

exceeding the speed limit by 20 to 30 miles per hour, plaintiff in the present case was either traveling at the legal speed limit or at most exceeding the advisory limit by 10 miles per hour.

Second, while there was some mention of the fact that other cars had left the road at the curve in *Battisfore*, the evidence of prior incidents was not as clear in that case as it is here. Defendants here were aware of well over 50 incidents of vehicles leaving Callahan Road and entering upon their property. Defendant Eugene Bauer accurately predicted that it was just a matter of time before someone else left the road and was stopped by his barrier. To the extent that the existence of prior incidents affects reasonable foreseeability, the evidence before us in the instant case appears to be much more compelling than it was in *Battisfore*.

Accordingly, we find that defendants did in fact owe plaintiff a duty of care in this case and that therefore the lower court erred in granting summary judgment.

Plaintiff also contends that defendants violated a statutory duty not to obstruct a public highway. Here, the basic issue becomes whether a genuine issue of material fact exists as to the location of defendants' barrier relative to the Callahan Road right-of-way. In this regard, however, plaintiff's position has been both inconsistent and incomplete.

In his complaint, plaintiff alleges, *inter alia,* that defendants were negligent in that they violated section 9—117 of the Illinois Highway Code (Ill. Rev. Stat. 1987, ch. 121, par. 9—117), which prohibits the injuring or obstructing of certain highways. In his initial appellate brief, however, plaintiff argues for the first time that defendants' barrier constitutes a public nuisance in violation of section 221(5) of "An Act to revise the law in relation to criminal jurisprudence" (Ill. Rev. Stat. 1989, ch. 100½, par. 26(5)). Although he cites several cases for the general proposition that violation of certain statutes may be held to be *prima facie* evidence of negligence (see, *e.g., Dini v. Naiditch* (1960), 20 Ill. 2d 406), plaintiff has provided us with no pertinent authority, and precious little in the way of argument, relative to violations of the public nuisance statute. Plaintiff does not address the alleged Highway Code violation in his initial brief, other than to make a bare reference to the paragraph in his complaint where the violation was first alleged as an act of negligence. He provides no argument or citation to pertinent authority regarding violations of the Highway Code. In his reply brief, plaintiff continues to argue a violation of the nuisance statute, but in support thereof he cites, for the first time, to

authority concerning a violation of the Highway Code. See *Swett v. Village of Algonquin* (1988), 169 Ill. App. 3d 78.

■ Of course, it is well settled that questions not raised in the trial court cannot be raised for the first time on appeal and are deemed waived. (*George W. Kennedy Construction Co. v. City of Chicago* (1986), 112 Ill. 2d 70, 77; *Burys v. First Bank* (1989), 187 Ill. App. 3d 384, 387-88.) In addition, points raised but not argued or supported with authority in a party's brief are also deemed waived for purposes of review. (134 Ill. 2d R. 341(e)(7); *People v. Dinger* (1990), 136 Ill. 2d 248, 254; *Burys*, 187 Ill. App. 3d at 387-88.) A reviewing court is entitled to have issues clearly defined with pertinent authority cited and cohesive arguments presented, and arguments not adequately presented on appeal may be waived. (*Spinelli v. Immanuel Lutheran Evangelical Congregation, Inc.* (1987), 118 Ill. 2d 389, 401; *Vincent v. Doebert* (1989), 183 Ill. App. 3d 1081, 1087; *Pecora v. Szabo* (1982), 109 Ill. App. 3d 824, 825-26.) This court is not simply a depository in which plaintiff may dump the burden of argument and research. *Pecora*, 109 Ill. App. 3d at 826.

■ Here, plaintiff's argument regarding the violation of a statutory duty consists of only two pages and gives us little assistance in our consideration of this issue. In light of the above principles, we conclude that, while the location of defendants' barrier relative to the Callahan Road right-of-way constitutes a material factual dispute, the plaintiff has effectively waived any argument on appeal relevant to alleged violations of the Highway Code or the nuisance statute.

For the foregoing reasons, we conclude that defendants were not entitled to judgment as a matter of law and that the trial court improperly granted defendants' motion for summary judgment. Having so concluded, we need not consider plaintiff's remaining contention on appeal. The judgment of the circuit court of Lake County is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

McLAREN, J., concurs.

PRESIDING JUSTICE REINHARD, dissenting in part and specially concurring in part:

I believe the majority's approach unduly expands the duty owed by landowners to travelers on adjacent highways. The majority finds that defendants, Eugene and Elizabeth Bauer, owed a duty of ordinary care

to plaintiff, Michael Hutchings, who was driving his motorcycle along the highway adjacent to defendants' property. In reaching this conclusion, the majority places its primary reliance on section 368 of the Restatement (Second) of Torts (hereinafter Restatement). Restatement (Second) of Torts §368, at 268 (1965).

Assuming that the horizontal log with which plaintiff collided was located entirely on defendants' property, I do not believe that section 368, as interpreted by Illinois courts, places a duty of ordinary care on defendants. Although never adopted as the rule in Illinois, section 368 has been viewed as a persuasive presentation of the common-law rule regarding the duty of landowners to travelers on adjacent highways. (*Ziemba v. Mierzwa* (1991), 142 Ill. 2d 42, 48. But see *Cross v. Moehring* (1989), 188 Ill. App. 3d 830, 832 (declining to follow section 368).) However, the duty of care embodied by section 368 applies only to foreseeable deviations from the roadway occurring in the ordinary course of travel. (*Battisfore v. Moraites* (1989), 186 Ill. App. 3d 180, 189.) The Restatement's illustrations of the rule refer to artificial conditions "immediately adjacent to" or "within a few inches of" the highway. Restatement (Second) of Torts §368, Illustrations 1, 2, at 270-71 (1965).

Here, the point of impact was at least 21 feet from the edge of the roadway and at least 150 feet from the point plaintiff first left the road. Other Illinois Appellate Court cases have found artificial conditions on private property closer to the road to be outside the scope of the duty imposed under section 368. (*Hoffman v. Vernon Township* (1981), 97 Ill. App. 3d 721, 723 (utility pole placed 12 to 16 feet from the roadway); *West v. Faurbo* (1978), 66 Ill. App. 3d 815, 818 (striking concrete block four or five feet off public sidewalk when swerving to avoid a moving automobile is neither an incidental deviation from the sidewalk nor an ordinary incident of travel).) Although a landowner's duty of care to those traveling on an adjacent highway can be extended to "those who stray a few feet from it inadvertently" (W. Keeton, Prosser & Keeton on Torts §57, at 389 (5th ed. 1984)), plaintiff's significant departure from the roadway while traveling 10 miles per hour over the advised speed limit cannot be construed as an incidental deviation or an ordinary incident of travel.

The majority finds this case distinguishable from prior cases based on two factors: (1) the fact that plaintiff was travelling at the legal speed limit; and (2) the foreseeability of deviations from the road based on prior occurrences. I find neither factor determinative here.

First, plaintiff admits he was traveling at 10 miles per hour over the advisory speed limit of 25 miles per hour. The majority's attention

to the fact that 25 miles per hour speed limit was only advisory and not mandatory might be appropriate if this case were a prosecution for speeding. However, the speed at which plaintiff was advised he could safely travel is even more relevant than the actual speed limit. The advisory speed limit, which warned plaintiff not to drive faster than 25 miles per hour, is more directly related to the question of whether plaintiff was "traveling with reasonable care upon the highway." Restatement (Second) of Torts §368, at 268 (1965).

Second, I find foreseeability based on prior occurrences to be of deceptively little importance in the instant scenario. Defendants placed the protective barrier on their property precisely *because* they foresaw that cars straying from the roadway could enter their property at a point along which defendants trained their horses almost every day. In fact, defendants asked the township to install a guardrail to protect them and their property, but the township declined to do so. Ironically, the foreseeability of cars leaving the roadway could also give rise to a duty on the part of defendants to *erect* a barrier in order to protect persons lawfully on their property. (See *Ray v. Cock Robin, Inc.* (1974), 57 Ill. 2d 19, 23.) The foreseeability of cars leaving the roadway cannot operate to impose a duty on defendants both to erect and not to erect a protective barrier.

The majority does not cite, nor has my own research discovered, a case applying section 368 of the Restatement wherein the obstruction complained of was explicitly designed in response to foreseeable deviations from the roadway. However, it is well established that the existence of a duty is not bottomed on foreseeability alone. (*Cunis v. Brennan* (1974), 56 Ill. 2d 372, 375.) Courts must also consider the burden to the defendant of imposing a duty and the consequences of imposing this burden. (*Ziemba*, 142 Ill. 2d at 47.) The majority underestimates the burden its approach will place upon landowners. I fail to see, for example, the utility of suggesting that defendants should have imposed a break-away fence when the purpose of the fence was to *stop* cars from careening onto the horse track. I also find it inappropriate to suggest that landowners such as defendants should place protective fences farther back from the roadway. While the majority may find it easy to make such a suggestion to defendants, whose rural property comprises approximately 80 acres, we must be wary of adopting a rule which could also apply to urban landowners who have built to the very edge of their lot lines. See *Cross*, 188 Ill. App. 3d at 832.

Moreover, I feel that it is unwise to expand the very limited duty of abutting landowners into a more far-reaching duty to assure the general safety of travelers whenever they leave the roadway. The

words of the Court of Appeals for the State of New York are instructive on this point:

> "Carried to its logical conclusion, this rule would require a landowner to remove every tree, fence, post, mailbox or name sign located on his property in the vicinity of the highway, or permit them to remain, subject to possible liability. This, in our opinion, would impose an intolerable burden upon a property owner.
>
> * * *
>
> It is the continuing duty of the State or the municipality, not the abutting landowners, to maintain the highways and streets in a reasonably safe condition for ordinary use by the public. * * * If the public right of way is too narrow, because of objects on the abutting land, the burden should fall upon the State to acquire additional property for its right of way * * *." *Hayes v. Malkan* (1970), 26 N.Y.2d 295, 299-300, 258 N.E.2d 695, 696-97 (refusing to extend a duty where the condition is on private property and not within the right-of-way).

The approach followed by the majority slights these concerns and, ironically, requires landowners to act in disregard of their own safety in order to protect the safety of others. I find that this would be an unduly burdensome responsibility to place upon landowners. I therefore dissent from the opinion of the majority insofar as it reverses summary judgment for defendants and holds that defendants owed a duty to plaintiff even if the collision occurred on their property.

In the present case, however, there are also allegations that the obstruction with which plaintiff collided was within the right-of-way on Callahan Road. Plaintiff raised the issue on appeal and, in the trial court, supported this assertion by deposition testimony that two of the vertical posts erected by defendants extended into the right-of-way. Thus, a factual question has been raised as to whether the portion of the line of posts erected by defendants with which plaintiff either collided or attempted to avoid is located on the right-of-way. I believe that, if plaintiff collided with an obstruction placed in the right-of-way by defendants, then it would be for the jury to determine whether the placement of the object was such as to create an unreasonable danger for travelers on the highway. (See *Kinsch v. Di Vito Construction Co.* (1964), 54 Ill. App. 2d 149, 155 (concrete block placed on shoulder of the road); *Hayes*, 26 N.Y.2d at 298, 258 N.E.2d at 696.) Because there remains a material question of fact in this regard, I agree with the majority that the entry of summary judgment in favor of defendants must be reversed, in part, as to the allegations based on this theory.