MARK HOLMSTROM *et al.*, Plaintiffs-Appellees, v. PAUL KUNIS *et al.*,
Defendants-Appellants.

Second District   No. 2—91—0074

Opinion filed November 7, 1991.

David J. Costello, of Krupa & Braun, Chartered, of Flossmoor, and Arvid C. Johnson, of Oak Lawn, for appellants.

Jerome E. Riley and Barbara J. Gosselar, both of Kubiesa & Power, Ltd., of Westmont, for appellees.

JUSTICE DUNN delivered the opinion of the court:

Defendants Paul Kunis and Thomas Spangler own the partnership that was the general contractor under a contract to build a home for plaintiffs, Mark and Geri Holmstrom. Defendant Travis Gravitt owned the company that subcontracted to install the sewer connection for plaintiffs' home. Plaintiffs sued all three defendants for breach of contract, alleging primarily that defendants did not install the sewer connection in a good and workmanlike manner. Plaintiffs obtained a default judgment against Gravitt and a judgment after a bench trial against Kunis and Spangler.

Defendants appeal, arguing that (1) the default judgment against Gravitt barred any judgment against Kunis and Spangler on the same contractual obligation; (2) plaintiffs failed to prove that defendants installed the sewer connection other than as directed by local officials; and (3) the trial court applied an improper measure of damages. We affirm.

Count I of plaintiffs' complaint, as finally amended, alleged the following facts. On or about May 1, 1987, defendants Kunis and Spangler, doing business as P.E.C. Construction, entered into a written agreement with plaintiffs to build a single-family home on plaintiffs' land in Clarendon Hills. As general contractors, Kunis and Spangler agreed to perform the construction, including connection of the sanitary sewer system, in a good and workmanlike manner. Plaintiffs performed all of their obligations under the contract, but Kunis and Spangler breached the contract by failing to connect the sewer properly. Count I of the plaintiffs' complaint prayed that Kunis and Spangler be held jointly and severally liable on the construction contract.

Count II of the complaint alleged that Kunis and Spangler subcontracted the sewer connection work to Travis Gravitt and Tri-Plex Construction, Inc. (Tri-Plex). Because Gravitt and Tri-Plex knew or should have known that this subcontract was for the plaintiffs' benefit, they were jointly and severally liable to plaintiffs for breaching this contract by failing to connect the sewer properly.

Plaintiffs' original complaint sought damages of $51,340.72 plus attorney fees and costs. Of the $51,340.72, $26,340.72 represented what plaintiffs were forced to pay Du Page County (the county) for proper connection for the sewer service, and the remaining $25,000

represented damages from plaintiffs' inability to secure financing for the property.

Plaintiffs obtained a default judgment against Gravitt for $26,340.72. After obtaining this judgment, but before trial, plaintiffs amended their complaint to increase the damages sought from $51,340.72 plus attorney fees and costs to $75,057.68 plus attorney fees and costs and interest at 8% on the amount owed to the county.

Before trial, Kunis and Spangler moved to dismiss the complaint, arguing that the cause of action against them merged into the default judgment against Gravitt. The court denied the motion, and the case went to trial.

Mark Holmstrom testified that he owned and resided at the property in dispute. In 1986, intending to build a new residence, he purchased the lot. Because he planned at first to be his own general contractor, he obtained a building permit and sewer permit from the county. The next year, he decided to hire P.E.C. as general contractor. Holmstrom and P.E.C., represented primarily by Kunis, negotiated the written building contract. When Holmstrom signed the contract, it was his understanding that P.E.C. would, as general contractor, hire all subcontractors and obtain any bonds or permits necessary from then on.

The building, including the sewer hookup, was completed in or around November 1987. About a month and a half after the initial hookup, Holmstrom learned that there was a problem with the sewer connection, necessitating reexcavation of the street. After the reexcavation work was finished, plaintiffs received written notice from the Du Page County Sanitary District that the water to plaintiffs' residence would be shut off unless they paid their bill. Holmstrom notified Kunis and Spangler about the problem. They assured him that they would resolve the matter, but to his knowledge they never did. Also, P.E.C. had not repaired other problems with the house, including a leaky roof and a broken door lock.

Early in 1988 Holmstrom obtained a construction loan on the premises. Originally the loan was to last three months, with interest payments monthly. Holmstrom ended up paying about $18,200 interest over 18 months. The bank would not close the loan because the county had placed a lien on his house. The lien was still there at the time of trial. Early in 1988, Holmstrom applied for a mortgage at 9.875% interest. He obtained the mortgage in October 1989. By then he had to agree to pay 10.5% interest. Plaintiffs deducted the interest payments on the loan and mortgage in figuring their Federal income tax liability for 1988 and 1989.

The county sent plaintiffs a bill for $26,342.72, representing the cost of repairing damage to the sewer system from the reexcavation. Plaintiffs signed an agreement with the county by which they acknowledged owing the money and promised to pursue their legal remedies against all defendants. The county promised not to terminate plaintiffs' sewer or water service. On December 12, 1989, plaintiffs and the county agreed further that if by January 1, 1990, plaintiffs had not successfully collected from any of the defendants, interest of 8% per annum would begin to accrue on the amount due. As of the trial, plaintiffs had paid none of the money due under the agreement.

Holmstrom had no personal knowledge of what caused the problems with the sewer connection. The county did not inform him in advance of any potential problems with the sewer.

Edward Worth, county sewer inspector with the Du Page County public works department, testified that on November 5, 1987, he attempted unsuccessfully to inspect the connection from the main sewer line to plaintiffs' residence. He arrived at the site at 1:30 p.m., about an hour before the scheduled time. He discovered that Tri-Plex had covered the connection with stone. He therefore could not see the connection at all. Worth spoke to Dan Thomas and to someone from Tri-Plex, asking them to reexcavate so that he could inspect the connection. The two, testified Worth, "hemmed and hawed," telling Worth that it would cost too much to reexcavate. Worth replied that he could not accept the connection unless he inspected it personally. At that point Thomas represented that he was the builder and would accept full responsibility for the connection if Worth would allow them to keep filling in the hole. Worth acquiesced.

Worth subsequently heard that the connection was malfunctioning. Sewage was backing up into the residence. Eventually, using a videotape of the inside of the sewer main, Worth determined that the problem was with the connection to plaintiffs' residence.

Worth was present at the reexcavation in January 1988. When the connection was uncovered, he saw that a piece of pipe was sticking into the sewer main. Worth saw no saddle of any kind around the pipe, though there may have been some concrete to hold the pipe in place. Worth testified that the county did not accept this procedure and that the contractor never asked his office about what saddles the county would accept. In his 20 years of inspecting sewer and water mains, Worth had never seen a connection such as this.

According to Worth, the excavation took up a space approximately 30 feet wide, 30 feet long and 24 feet deep. Tri-Plex did not use a trench box or anything comparable to guard against cave-ins, used an

insignificant amount of shoring inside the hole and installed no fencing barricades to protect the site overnight.

On cross-examination Worth acknowledged the theoretical possibility that the collapse of the sewer main could cause a connection to fall into the main. He insisted that such a possibility would not explain how the pipe here became stuck in the main. Moreover, he maintained, there was nothing wrong with the condition of the main at that point. The main had not collapsed and had caused no problems since the reexcavation.

Edward Smith, township highway commissioner for the Village of Downers Grove, testified that he was familiar with the construction in this case, as the street involved was part of the township road system. When area residents alerted him to the reexcavation in January 1988, he visited the site. Smith asked Travis Gravitt why Tri-Plex had not obtained a permit, posted a bond, or provided a certificate of insurance to Smith's office; Gravitt walked away without answering. Smith could see that there had been cave-ins at the site and that Tri-Plex had provided no trench box or comparable protection against this danger.

Smith concluded that the site was unsafe for workmen and so informed the township attorney. After inspecting the site, the township attorney agreed with Smith and asked Tri-Plex to leave the project. Both safety problems and the lack of a bond or certificate of insurance motivated this request.

Geri Holmstrom testified that plaintiffs moved into the new house only after receiving the occupancy permit in June 1988. She had no direct knowledge of the problems with the sewer connection. After moving in, she received a notice from the county threatening to shut off the water. Holmstrom called Spangler, who assured her that P.E.C. would take care of the problem. To the best of Holmstrom's knowledge, P.E.C. did nothing more about the matter. The county's notice specified that plaintiffs could appeal, but plaintiffs neither did so nor informed P.E.C. of the appeal process.

Gregory Wilcox, director of the Du Page County Department of Environmental Concerns, testified that he authorized work on the jobsite after Edward Smith and the township attorney told him that they believed the site was unsafe. A field crew Wilcox sent reported that the site was unsafe and that the sewer connection itself was improperly installed. Wilcox arranged for Abbott Construction to complete installation of the main over the weekend. Wilcox billed plaintiffs for the cost of finishing the work. None of the bill had been paid as of the trial.

Defendants' first witness was Paul Kunis. Kunis testified that when he and plaintiffs negotiated the contract, plaintiff Mark Holmstrom informed him that he (Holmstrom) already had all the necessary permits, bonds and surveys needed to start building. Holmstrom informed Kunis that the latter need not worry about permits and showed Kunis his county building permit. Kunis never specifically asked plaintiffs to show him the necessary street bond; he relied on their representations and their possession of the building permit. According to Kunis, a street bond is a prerequisite for a building permit in unincorporated Du Page County. A construction bond normally is good for a year; one obtained in June 1987 thus would have been in effect in January 1988. Kunis acknowledged that the "hard card" that plaintiffs showed him was issued in June 1986 and that any bond that had been obtained would have expired by June 1987. However, although insurance companies customarily send out notice that bonds are about to expire (and may be renewed), Kunis was never so notified.

When a local official informed him that mud was going into plaintiffs' sewer line, Kunis told plaintiffs that he had asked Tri-Plex to reexcavate the site and work on the problem.

According to Kunis, P.E.C. fixed the problems with the floor and roof before plaintiffs moved in. Plaintiffs paid Kunis in full for the house and, other than this lawsuit, did not demand money back for necessary repair work.

Defendants next called Thomas Pauley, Tri-Plex's foreman on the sewer connection. Pauley disagreed with Edward Worth's statement that Tri-Plex had not used a saddle in making the connection. The clay piping itself was a saddle, and the connection met governmental specifications. According to Pauley, Worth saw the clay piping at the time of the original connection and never told anyone from Tri-Plex that the connection was improper.

When Tri-Plex reexcavated, Pauley saw nothing improper with the original hookup except that the saddle had broken into the main, which appeared to be at least 25 years old.

On cross-examination, Pauley conceded that when Worth arrived to inspect the original connection, Tri-Plex had already covered the connection with stone. He explained that Tri-Plex did so because Worth was several hours late and a cave-in was possible. He conceded that Worth could not have seen the connection at this time unless the hole was uncovered.

Pauley acknowledged that Dan Thomas was on site for the original connection. Thomas signed a contract on behalf of P.E.C., hiring Tri-Plex as subcontractor.

Travis Gravitt was director of Tri-Plex at the time it subcontracted the sewer connection work for plaintiffs. He testified that before performing the original hookup, he telephoned Edward Worth, who told him that the county required a clay saddle for the clay pipe involved in the project. On the day of the connection, November 5, 1987, Worth showed up early but left and did not return until around 1:30 or 2:30 p.m.

In January 1988, according to Gravitt, Worth informed Tri-Plex that there was mud in the sewer. Tri-Plex investigated and discovered that the sewer main had collapsed. Tri-Plex attempted to repair the problem, but was asked to leave early on the second day of the repair work.

Gravitt recounted that Mark Holmstrom came to the jobsite on the second day of the reexcavation, before Tri-Plex was asked to leave. Gravitt testified that when he asked Holmstrom for some bonds, Holmstrom told him that he would go to the township office and get everything straightened out. On cross-examination, Gravitt recalled that Dan Thomas was also at the site that morning and had assured Gravitt that Mark Holmstrom had all of the bonds and was going to straighten things out with the township. It was possible, conceded Gravitt, that Thomas also told township officials at the site that Thomas would make sure that "[h]e gets everything up there that he needs."

According to Gravitt, nobody told Tri-Plex of any deficiencies in its safety equipment on the first day of the reexcavation. Both Tri-Plex and the county supplied barricades, and the county never told Tri-Plex that it did not have enough of them.

Gravitt was a director of Tri-Plex from its inception. Tri-Plex issued no stock, and nobody made any capital investments. By the time of trial, Tri-Plex was no longer operating and had no assets.

Plaintiffs called Mark Holmstrom in rebuttal. He testified that after construction began he never assured Gravitt or anyone else that he would obtain the necessary bonds. He never assured anyone that he had everything necessary to complete the contract. He obtained a driveway entrance bond along with the construction permit and had originally planned to build the home "completely off that permit." When he started negotiations with P.E.C., Holmstrom informed Kunis that he had obtained the permit and the driveway entrance bond.

Holmstrom stated that he stopped at the construction site about 20 times. He never spoke with Travis Gravitt, but heard some conversations about bonds. He had no personal knowledge of what happened with the sewer main.

The trial court found that defendants had breached their contractual duty to perform in a good and workmanlike manner, had not timely corrected the breach, and were liable to plaintiffs for $65,000 in damages, including attorney fees. Defendants then brought this appeal.

Defendants argue first that the trial court erred in not dismissing plaintiffs' suit against Kunis and Spangler after plaintiffs obtained a default judgment against Gravitt. Defendants argue that the cause of action against Kunis and Spangler merged into the judgment on the same contract against Gravitt, preventing any further recovery. We disagree.

■■ Under the common-law doctrine of merger, a judgment against fewer than all joint obligors on a contract will bar future recovery against any of the remaining joint obligors. (See, *e.g., Jansen v. Grimshaw* (1888), 125 Ill. 468, 474.) Illinois, however, has departed from the common-law rule and now declares that all joint contractual obligations are also joint and several obligations (Ill. Rev. Stat. 1989, ch. 76, par. 3). Section 2—410 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—410) therefore provides that "[a]ll parties to a joint obligation *** may be sued jointly, or separate actions may be brought against one or more of them. *A judgment against fewer than all the parties to a joint or partnership obligation does not bar an action against those not included in the judgment* or not sued. Nothing herein permits more than one satisfaction." (Emphasis added.) (See also *Handley v. Unarco Industries, Inc.* (1984), 124 Ill. App. 3d 56, 67.) The judgment against Gravitt thus did not bar the plaintiffs from suing Kunis and Spangler.

Defendants raise two other points against the judgment. The first is that (to quote their brief) "[p]laintiff [*sic*] failed to prove that defendant [*sic*] did not install the subject sewer in a manner other than as was [*sic*] directed by the County of Du Page." Defendants' sole argument in this regard is to reproduce two pages of testimony by Travis Gravitt and to assure us that it proves their point. Defendants' reply brief reproduces testimony from Thomas Pauley, again without substantial elaboration.

Defendants argue second that the trial court failed to apply the accepted rule of law in determining damages. Defendants' only authority is a case discussing damages against a defendant who has sub-

stantially performed in a workmanlike manner—which the trial court expressly found was not true of defendants here. Citing neither authority nor the record, defendants also argue that the parties did not contemplate the damages here when they drafted the contract.

We do not reach the merits of either argument as neither has been properly presented on appeal. Supreme Court Rule 341(e)(7) (134 Ill. 2d R. 341(e)(7)) admonishes appellants that arguments in an appellant's brief shall include "citation of the authorities and the pages of the record relied on. Evidence shall not be copied at length ***. *** Points not argued are waived and shall not be raised in the reply brief *** ."

A reviewing court is entitled to have issues clearly defined with pertinent authority cited and coherent arguments presented; arguments inadequately presented on appeal are waived. (*Spinelli v. Immanuel Lutheran Evangelical Congregation, Inc.* (1987), 118 Ill. 2d 389, 401; *Hutchings v. Bauer* (1991), 212 Ill. App. 3d 172, 183.) Statements unsupported by argument or citation of relevant authority do not merit consideration on review. (*Hutchings*, 212 Ill. App. 3d at 183; *People v. Trimble* (1989), 181 Ill. App. 3d 355, 356.) A reviewing court will not become an advocate for, as well as the judge of, points the appellant seeks to raise. *Trimble*, 181 Ill. App. 3d at 356.

Defendants have barely articulated, much less properly supported, grounds for disturbing the trial court's findings. Rather, they ask this court to comb the record for them to uncover possible trial court error. We decline to do so. We do note that our independent examination of the record does not persuade us that the trial court committed any reversible error.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

BOWMAN and UNVERZAGT, JJ., concur.